# IN THE CIRCUIT COURT OF BALTIMORE COUNTY MARYLAND

| | | |
|---|---|---|
| **JAMES A. ORAZI** | * | |
| **KIMBERLY RIDER-ORAZI** | | |
| 2503 Garsden Court | * | |
| Jacksonville, MD 21131 | | |
| | * | |
| **Plaintiffs** | | |
| | * | |
| **Vs.** | | |
| | * | **Case No:** C-15-4182 |
| **BAC HOME LOANS** | | |
| **SERVICING, LP** | * | |
| **NOW MERGED WITH BANK OF AMERICA,** | | |
| **NATIONAL ASSOCIATION** | * | |
| 100 North Tryon Street | | |
| Charlotte, NC 28280 | * | |
| | | |
| Resident Agent: | * | |
| The Corporation Trust Incorporated | | |
| 351 West Camden Street | * | |
| Baltimore, MD 21202 | | |
| | * | |
| **RUSHMORE LOAN MANAGEMENT** | | |
| **SERVICES, LLC** | * | |
| 2711 Centerville Road | | |
| Suite 400 | * | |
| Wilmington, DE 19808 | | |
| | * | |
| Resident Agent: | | |
| CSC-Lawyers Incorporating | * | |
| Service Company | | |
| 7 St. Paul Street | * | |
| Suite 820 | | |
| Baltimore, MD 21202 | * | |
| | | |
| **US BANK NA AS LEGAL TITLE** | * | |
| **TRUSTEE FOR TRUMAN 2013** | | |
| **SC3 TITLE TRUST** | * | |
| 60 Livingston Avenue | | |
| St. Paul, MN 55107 | * | |
| | | |
| **Defendants** | * | |

RECEIVED AND FILED
2015 APR 16 A 11:51
CLERK OF CIRCUIT COURT
BALTIMORE COUNTY

................................................................................................

## COMPLAINT

James A. Orazi and Kimberly Rider-Orazi, Plaintiffs, by their counsel, Robert N. Grossbart and Grossbart, Portney and Rosenberg, P.A., file this Complaint against BAC Home Loans Servicing, LP, Bank of America, NA, Rushmore Loan Management Services, LLC, and US Bank NA as Legal Title Trustee For Truman 2013 SC3 Title Trust and for reasons state as follows:

## PARTIES/VENUE/JURISDICTION

1. Plaintiffs are individuals domiciled and residing in the State of Maryland.

2. Plaintiffs are the owner of the property known as 2503 Garsden Court, Phoenix, MD 21131(herein after referred to as "Property").

3. The Property at issue is located in Baltimore County, Maryland.

4. As of July 1, 2011 defendants BAC Home Loans Servicing, LP and Bank of America, National Association merged and are hereinafter referred to as "BOA".

5. BOA is a globally recognized banking institution providing home mortgage lending in the United States, including the State of Maryland.

6. BOA's principal office is 100 North Tryon Street, Charlotte, NC 28280 c/o The Corporation Trust Incorporated.

7. Rushmore Loan Management Services, LLC is a loan servicing company conducting business throughout the United States with its principal office located at 2711 Centerville Road, Wilmington, DE 19808 c/o CSC-Lawyers Incorporating Service Company.

8. U.S. Bank National Association as Trustee for the Truman 2013 SC 3 Title Trust C/O U.S. Bank Corporate Services has its principal office located at 60 Livingston Avenue, St. Paul, MN 55107.

9. At all times relevant, all transactions, settlements, and closings occurred in the State of Maryland.

10. Venue is proper in this forum and this Honorable Court has personal jurisdiction over the Parties pursuant to MD Code, Courts and Judicial Proceedings, § 6-103 because this cause of action arose out of transactions or occurrences that took place in whole or in part in Baltimore County, Maryland.

**<u>FACTS COMMON TO ALL COUNTS</u>**

11. On June 29, 2007 James A. Orazi & Kimberly Rider-Orazi (hereinafter "Plaintiffs") purchased a house located at 2503 Garsden Ct. Phoenix, Md. 21131. The purchase price was $1,160,000. On that same date the Plaintiffs obtained a stated-income, interest only ARM Purchase Money Deed of Trust @ 6.0% interest in the amount of $812,000.00 with BOA loan number 870329837. The Plaintiff, James A. Orazi, signed the promissory note individually. The Plaintiff, Kimberly Rider-Orazi, did not sign the promissory note. This mortgage was originally being serviced by BAC Home Loans Servicing, LP. However, records from the Maryland Department of Assessment and Taxation show that BAC Home Loans Servicing, LP merged with Bank of America, N.A. on July 7, 2011.

12. On August 27, 2008 the Plaintiffs obtained a second deed of trust/line of credit with the State Employees Credit Union of Maryland, Incorporated (hereinafter "SECU"). That loan still exists and has remained current at all relevant times from the time it was taken up to and including the date this complaint is filed.

13. On or about March 30, 2010 Mr. Orazi was terminated from his job as the Senior Vice-President of residential lending at Severn Bank.

14. On or about April 7, 2010 Mr. Orazi contacted BOA by telephone to inquire about a loan modification. Mr. Orazi spoke to a BOA representative named Alex who transferred him to a different department. Mr. Orazi spoke to the next BOA representative named Ingrid who stated that a modification was not available because the loan was current and further went on to state that "the loan must be delinquent" to be considered for a loan modification. Since Mr. Orazi was in the process of looking for a new job he did not feel comfortable falling behind on his mortgage

15. On or about June 7, 2010, despite the fact that the Plaintiffs continued to be current with the BOA mortgage, Mr. Orazi applied for a loan modification for the first time. That request was denied by BOA because the loan was still current.

16. On August 28, 2010 Mr. Orazi found a new job as a Home Mortgage Consultant working for Wells Fargo.

17. Beginning in November, 2010, having exhausted their savings, the mortgage payments to BOA fell behind. The Plaintiffs submitted a second loan modification at that time and was again denied by BOA because the loan was still contractually current.

18. On or about December 7, 2010 the Plaintiffs hired the Law Offices of Daniel M. Radebaugh, LLC for the purpose of obtaining a loan modification. Mr. Radebaugh's office contacted BOA and was informed that the BOA point of contact was Marcie Sanders. Subsequently another loan modification application was filed on behalf of the Plaintiffs along with all of the documentation requested by BOA.

19. On or about April 6, 2011 Ms. Sanders contacted Mr. Radebaugh's office and stated that BOA could not offer any loan modification based on the documents that had been submitted. Ms. Sanders indicated that the income calculation needed to be resubmitted.

20. On April 18, 2011 Mr. Radebaugh's office was informed by BOA that a new point of contact representative named Daisy Apodacca had taken over the file and Ms. Apodacca was the only one to correspond with. On that same day corrected income documentation was submitted to Daisy Apodacca.

21. Mr. Radebaugh's office was ultimately unsuccessful in obtaining a Loan Modification Agreement (hereinafter referred to as a "LMA") on behalf of the Plaintiffs with BOA. The Plaintiffs paid a total of $500.00 to Mr. Radebaugh. On or about May 4, 2011 The Plaintiffs terminated the services of Mr. Radebaugh

22. On or about May 4, 2011 Mr. Radebaugh informed the Plaintiffs that Daisy Apodaca sent an email indicating that as of April 27, 2011 she was no longer assigned and that Christine Pryor was now the new point of contact representative.

23. On April 28, 2011 the Plaintiffs received a Notice of Intent to Foreclose from BOA. See exhibit "A" which is attached hereto and prayed to be made a part of herein.

24. Christine Pryor sent a letter to the Plaintiffs dated May 26, 2011 stating that the Plaintiffs were not eligible for a loan modification because certain required documents had not been submitted.

25. On or about May 26, 2011 the Plaintiffs contacted Christine Pryor by telephone to determine what documents needed to be resubmitted. That same day the requested documents were submitted to BOA.

26. The Plaintiffs received a letter from BOA dated June 23, 2011, signed by Christine Pryor, declining to grant a loan modification because "we were unable to reach an affordable mortgage payment". See exhibit "B" which is attached hereto and prayed to be made a part of herein.

27. On or about July 1, 2011 the servicing of the mortgage with BOA was transferred from BAC Home Loan Servicing, LP to Bank of America, NA. See exhibit "C" which is attached hereto and prayed to be made a part of herein.

28. On or about July 1, 2011 the Plaintiffs contacted Lavetta Jackson of the Maryland Department of Housing and Community Development Emergency Homeowners' Loan Program (hereinafter "EMA"). At that time the Plaintiffs were behind with the mortgage with BOA but current with the second mortgage with SECU.

29. On or about August 15, 2011 in the BOA Columbia, MD office the Plaintiff, Mr. Orazi, met with a new BOA contact person, Sandy Wilde, Assistant Vice President, who took the place of Cristina Pryor. Ms. Wilde introduced Mr. Orazi to Melanie Touhy, Underwriter to discuss the possibility of obtaining a loan modification. At that time Mr. Orazi was informed of the possibility of a "preemptive loan modification" if his mortgage with BOA could be brought current.

30. During August and September, 2011 the Plaintiffs continued to work with EMA to get a loan in order to bring the BOA mortgage current. On September 19, 2011 Mr. Orazi conducted an email exchange to Sandy Wilde, AVP. Mr. Orazi asked Ms. Wilde if the mortgage was brought current would BOA approve a "preemptive loan modification". Ms. Wilde replied that "to her knowledge" BOA would grant such a loan modification. See exhibit "D" which is attached hereto and prayed to be made a part of herein.

31. On September 29, 2011, relying upon Ms. Wilde's statement, the Plaintiffs were induced by BOA to receive a loan from EMA in the amount of $50,000.00 which was the upper limit of funds that EMA would loan to troubled home owners. BOA provided EMA the amount necessary to bring the Plaintiffs' BOA loan current. The Plaintiffs were told to bring a certified check, in the amount of $9,031.96, to settlement. See exhibit "E" which is attached hereto and prayed to be made a part of herein.

32. On or about October 3, 2011 EMA disbursed funds to BOA. Approximately fifty days later, on or about November 22, 2011, BOA applied said sums to Plaintiffs' mortgage which brought the Plaintiffs' mortgage contractually current. From that time to the present Plaintiffs have remained ready, willing and able to pay the monthly mortgage payment and have, in fact, placed all monies owed into a money market account for the purposes of this litigation.

33. On October 7, 2011 the Plaintiffs received an email from Thomisa Dinkins, the new point of contact representative with BOA, requesting documents from the Plaintiffs. On October 21, 2011 Mr. Orazi spoke with Ms. Dinkins on the telephone. Despite having previously submitted four separate loan applications and all documents associated therewith to BOA, Ms. Dinkins informed Mr. Orazi that BOA did not have any documents noted in its records.

34. On October 31, 2011 the Plaintiffs sent an email to Thomisa Dinkins stating "Attached are the documents you have requested. This is now the 5th time I have provided these documents. Please confirm receipt of the documents." The Plaintiffs, despite having sent $59,031.96 to BOA, had not yet received a LMA.

35. In November and December, 2011 Plaintiffs worked with Representative Andy Harris's office in hopes of getting BOA to send a LMA to Plaintiffs. Mr. Harris' office wrote a letter to BOA but was not able to help the Plaintiffs get a LMA.

36. Plaintiffs received a letter, dated October 31, 2011, from Sharlene Spencer of BOA who had been assigned as the next point of contact representative. The Plaintiffs again sent the complete settlement package from EMA to her. The Plaintiffs still had not received a LMA from BOA.

37. On December 6, 2011 the Plaintiffs received an email from Shontell Wellingham of BOA who had been assigned, yet again, as the next point of contact representative. The Plaintiffs still had not received a LMA.

38. On December 15, 2011 Ms. Wellingham, in response to Mr. Orazi's inquiries regarding the status of his LMA, told Mr. Orazi to telephone Sonia Velaquez who was the LMA processor for BOA.

39. On December 27, 2011 the Plaintiffs received an email from Sonia Velazquez of BOA, who stated that mortgage payments had not been made since November, 2011. On or about that same day Mr. Orazi spoke on the telephone with Kim from the zero coupon department of BOA. Mr. Orazi was told by Kim that the principal curtailment will be reversed and the funds will be applied to the December payment which will bring the loan current through December, 2011. The Plaintiffs still had not received a LMA.

40. On December 28, 2011 Plaintiffs received an email from Sonia Velazquez who informed Plaintiffs that she had all of the documents that were needed and the Plaintiffs' file was being sent to the underwriter. Sonia informed the Plaintiffs that the LMA should be arriving in 30-45 days.

41. Under a cover letter dated April 6, 2012 the Plaintiffs finally received a LMA from BOA. The cover letter advised the Plaintiffs "that your loan modification has been approved". The modification provided for initial interest rate of 2.0% which was charged on the first day of May, 2012. The "Anticipated Principal Balance" was noted to be $811,743.79. In bold letters the cover letter states that "In order for this modification to become effective on 05/01/2012 you must make your normal monthly payment for 04/01/2012 in the amount of $5,667.51."

42. The initial monthly principal and interest payment was to be $2,458.17 due and payable on 5/1/2012. Additionally, the LMA required a monthly escrow payment of $1,608.79. Plaintiffs believed that this monthly escrow payment was twice as high as it should be. Plaintiffs telephoned BOA and spoke to Sharlene Spencer about the escrow payment. Ms. Spencer stated that escrow payments were handled by a different department. Considering the amount of time and effort it took for the Plaintiffs to receive the LMA, Plaintiffs decided to execute the LMA, drafted and propounded by BOA, and to deal with the escrow issue at a later date.

43. The LMA required a notarized signature of both Plaintiffs and written instructions were given to contact Service Link, a notary company, who would send a representative to the Plaintiffs' home to have the Plaintiffs' signatures notarized. Plaintiffs complied with BOA's instructions and, on April 17, 2012, a notary from Service Link came to the Plaintiffs' home. The LMA was executed by James A. Orazi as the Borrower and also executed by Kimberly Rider-Orazi as the non-borrowing spouse. The executed LMA was sent to BOA by Service Link as instructed by BOA. See exhibit "F" attached hereto and prayed to be made a part of herein.

44. On April 23, 2012 the plaintiffs made a payment to BOA by telephone in the amount of $5,667.51 as instructed by BOA as stated in the LMA which was drafted and propounded by BOA. The BOA confirmation number is 20120423065439359. See exhibit "G" which attached hereto and prayed to be made a part of herein.

45. On May 7, 2012 the plaintiffs received an email from Sonia Velaquez acknowledging receipt of the executed LMA. The email stated that payments were not applied correctly. This was the first time that the Plaintiffs were informed that there was problem. BOA refused to recognize and honor the executed LMA. See exhibit "H" attached hereto and prayed to be made a part of herein.

46. On June 29, 2012 the Plaintiffs received a letter from Robin Porter of BOA and were told that she was now the new point of contact representative for BOA.

47. From early May, 2012 through September, 2012 Plaintiffs diligently, if not daily, sought information from BOA to correct the problem of payments not being applied correctly. Plaintiffs were informed that monies disbursed by EMA to BOA had been sent back to EMA. The return of said funds resulted in a delinquency status.

48. The Plaintiffs were never given an explanation of what funds were returned to EMA, why they were returned, and whether the request for returned funds was related to the six months it took BOA to process the loan modification request initiated in August, 2011. Plaintiffs were also never given an opportunity to address and correct any accounting errors in order to bring their account current.

49. Plaintiffs received a letter from BOA dated October 24, 2012 stating that Plaintiffs' BOA mortgage had been referred to foreclosure. See exhibit "I" which is attached hereto and prayed to be made a part of herein.

50. Plaintiffs received a letter from BOA, dated November 19, 2012 informing Plaintiffs that a pre-emptive loan modification was not an option.

51. In January, 2013 the Plaintiffs sought legal advice from Owen Jarvis an attorney working for St. Ambrose Housing Aid Center, Inc. On January, 30, 2013 a Qualified Written Request was sent by Owen Jarvis outlining the efforts put forth by the Plaintiffs to obtain a loan modification. BOA responded to Mr. Jarvis's letter stating that BOA could not communicate with Mr. Jarvis because the Plaintiffs had not provided authorization for such communication. See exhibit "J" which is attached hereto and prayed to be made a part of herein.

52. On February 26, 2013 Plaintiffs sent Authorization to Release Information forms to BOA granting BOA permission to speak with Mr. Jarvis. BOA never responded to Mr. Jarvis' Qualified Written Request.

53. On February 13, 2013 the Plaintiffs attended a BOA loan modification workshop held at the Sheraton in Towson, MD. The Plaintiffs met with a BOA representative who would only identify herself as "BANA" (Bank of America, NA?) from California. Plaintiffs asked BANA to honor the April, 2012 LMA. BANA reviewed the document. BANA acknowledged that the Plaintiffs had a binding legal agreement with BOA and she was "escalating" the LMA paperwork. BANA told Plaintiffs that they would receive a resolution within thirty days. Plaintiffs asked for information to follow up with BANA but she refused to provide any contact information stating that the local BOA representatives located in Columbia, MD will remain Plaintiffs' permanent point of contact.

54. Within two weeks Plaintiffs spoke with Robin Porter, BOA's most recent point of contact representative, who said that BANA misspoke. That BOA had no record in their system of an "escalation" of Plaintiffs' request for BOA to honor the LMA.

55. Approximately one month later, despite never having applied for or requested another LMA, the Plaintiffs received a second LMA from BOA, dated March 5, 2013, signed by Robin Porter. However, the second LMA added an additional $77,556.28 to the previous principal balance stated in paragraph 41. Plaintiffs firmly assert that the first LMA is a binding contract, rejected the second LMA and never sent back an executed copy to BOA. See exhibit "K" which is attached hereto and prayed to be made a part of herein.

56. Beginning April, 2013 the Plaintiffs continued to seek legal counsel consulting with additional attorneys. Plaintiffs decided to wait for BOA to file a Complaint for Foreclosure in which the Plaintiffs could raise all of the issues regarding BOA's refusal to recognize the LMA as an affirmative defense.

57. Since 2011 BOA, as well as the new servicer, Rushmore Loan Management Services, LLC, sent several notices of intent to foreclose but to date a complaint for foreclosure has never been filed.

58. On May 23, 2013 the Plaintiffs were informed that William Brown of BOA is, yet again, the new point of contact representative assigned to their case.

59. Plaintiffs continue to believe that the escrow payment cited in the LMA is incorrect but, at all times relevant, Plaintiffs have remained ready, willing and able to pay the monthly payment of $4,066.96 and have, in fact, placed all monies owed under the LMA into a money market account for the purposes of this litigation. Plaintiffs continue to remain current on the second mortgage with SECU. However, the third mortgage with EMA, which BOA induced the Plaintiffs to enter into, is in default.

60. Plaintiffs received a letter from Rushmore Loan Management Services, LLC, dated January 30, 2014, stating that BOA had transferred the servicing of the mortgage to

Rushmore Loan Management Services, LLC. See exhibit "L" which is attached hereto and prayed to be made a part of herein.

61. On March 20, 2014 BOA assigned the original, first deed of trust to US Bank NA as Legal Title Trustee For Truman 2013 SC3 Title Trust. Since that time the Plaintiffs new servicer has been and continues to be Rushmore Loan Management Services, LLC.

## COUNT I: SPECIFIC PERFORMANCE

62. Plaintiffs incorporate Paragraphs 1 through 61 by reference as if fully set forth herein.

63. An actual controversy has arisen between Plaintiffs and Defendants regarding a LMA referenced herein.

64. Plaintiffs accepted and tendered consideration to BOA and BOA executed and accepted consideration to bind both parties to the LMA signed by Plaintiffs on April 17, 2012.

65. Plaintiffs and Defendants are bound by the terms of the LMA.

66. Defendants continue to ignore the terms of the LMA and have been given ample time to perform under the LMA.

67. The Plaintiffs can only be made whole by the specific performance of the LMA in addition to the other damages prayed for.

WHEREFORE, Plaintiffs are entitled to a declaratory judgment pursuant to Md. Code, Courts and Judicial Proceeding, § 3-403, declaring among other things:

A. A ruling that the LMA remains in full force and effect; and

B. A ruling that pursuant to the LMA Plaintiffs retain their exclusive rights to the terms of the LMA; and

C. A ruling that Plaintiffs are in compliance with the LMA; and

D. A ruling that Defendants have not complied with the LMA; and

E. Such other and further relief as the nature of their cause may require.

**COUNT II: DECLARTORY JUDGMENT**

68. Plaintiffs incorporate Paragraphs 1through 67 by reference as if fully set forth herein.

69. An actual controversy has arisen between Plaintiffs and Defendants regarding the LMA at issue and its enforcement.

70. The LMA is a binding, enforceable agreement signed and accepted voluntarily by the parties thereto upon the receipt of the consideration of the April 1, 2012 payment of $5,667.51 under the LMA.

71. No acts by either party have terminated, voided, canceled, or caused an expiration of the performance and obligations under the LMA Agreement.

WHEREFORE, Plaintiffs are entitled to a declaratory judgment pursuant to MD Code, Courts and Judicial Proceedings, § 3-403, declaring the following rulings:

A. That the LMA remains in full force and effect; and

B. That the reportings against Plaintiffs credit be reversed as if no reportings had been made by Defendants against Plaintiffs' credit score; and

C. Such other and further relief as the nature of their cause may require.

**COUNT III: BREACH OF CONTRACT**

72. Plaintiffs incorporate Paragraphs 1 through 71 by reference as if fully set forth herein.

73. BOA offered and Plaintiffs accepted to be bound by the LMA for the life of the loan, the material terms of which were that Plaintiffs would pay an interest rate of 2% for the first five years on the Principal Loan Amount, monthly payments would thereby be decreased to $2,458.17 per month, the maturity date would be extended to April 1, 2052.

74. Plaintiffs tendered their first payment to BOA pursuant to the LMA in the amount of $5,667.51 on April 23, 2012.

75. BOA failed to honor the LMA thereby breaching its covenants and obligations within the LMA as a whole.

76. BOA unilaterally rescinded the LMA, without notice and without cause or through judicial process, thereby breaching its covenant to honor the terms within the LMA.

77. BOA has continued in its failures and breaches amidst countless requests by Plaintiffs to oblige to and honor the LMA.

78. Plaintiffs have continued to place all payments required under the LMA in a Money Market Account until this Honorable Court grants or orders otherwise.

79. While waiting for results or a settlement on the disputes of the LMA, Defendants have threatened to foreclose on the Property multiple times while a LMA is in place.

80. Defendants have breached the LMA by not obliging to the terms of the LMA and attempting to unjustly, and unilaterally, rescind the LMA.

81. As a direct result of Defendant's breaches and failures, Plaintiffs have suffered, among other things, great loss to their credit score, liability for a third mortgage as more fully stated in paragraphs 25 through 29, financial difficulties in obtaining credit cards or other methods of loan/credit relationships with banks, great expense in pursing their rights related to Defendant's rescission of the LMA, severe physical symptoms brought on by the stress of the

ongoing refusal of Defendants to honor the LMA resulting in large medical bills and expenses, and Plaintiffs have suffered great emotional distress requiring treatment by professional therapists and the ensuing expense related to that treatment.

82. As further proximate cause of Defendant's breaches Plaintiffs have suffered, and will continue to suffer, general and special damages in an amount according to proof at trial.

WHEREFORE, the Plaintiffs pray for the following relief against Defendants:

A. A ruling that the LMA remains in full force and effect; and

B. A ruling that pursuant to the LMA Plaintiffs retain their exclusive rights to the terms of the LMA; and

C. A ruling that Plaintiffs are in compliance with the LMA; and

D. A ruling that Defendants have not complied with the LMA; and

E. A money judgment of all damages caused by Defendant's actions, directly or indirectly, of $500,000.00; and

F. Plaintiffs' costs including attorneys' fees as well as pre and post judgment interest; and

G. Such other and further relief as the nature of their cause may require.

## COUNT IV: PROMISSORY ESTOPPEL

83. Plaintiffs incorporate Paragraphs 1 through 82 by reference as if fully set forth herein.

84. BOA made a promise under the LMA which Plaintiffs should reasonably have expected would induce Plaintiffs to take out a third mortgage from EMA and from acting or forbearing on the obligations and performances under the original Loan Agreement by virtue of the material changes to the interest rate and monthly payment under the LMA.

85. Plaintiffs have detrimentally relied upon the promises made by BOA's agents prior to the LMA and relied upon the LMA's terms and conditions to modify the original Loan Agreement as Plaintiffs were unable to make payments on the original Loan Agreement.

86. Plaintiffs acted on making the monthly payments as directed in the LMA and after BOA failed to honor the LMA, and to avoid further penalties for having the monies held in a suspense account and/or applied to the original Loan Agreement rather than the LMA by BOA, Plaintiffs made the payments pursuant to the LMA to a money market account until a resolution would be reached.

87. Injustice can be avoided only through enforcement of the LMA.

88. As a result of BOA's promises and misrepresentations, and Plaintiffs' detrimental reliance on such promises and misrepresentations, Plaintiffs have suffered special and general damages in an amount according to proof at trial.

WHEREFORE, the Plaintiffs pray for the following relief against Defendants:

A. A ruling that the LMA remains in full force and effect; and

B. A ruling that pursuant to the LMA Plaintiffs retain their exclusive rights to the terms of the LMA; and

C. A ruling that Plaintiffs are in compliance with the LMA; and

D. A ruling that Defendants have not complied with the LMA; and

E. A money judgment of all damages caused by Defendant's actions, directly or indirectly, of $500,000.00; and

F. Plaintiffs' costs including attorneys' fees as well as pre and post judgment interest; and

G. Such other and further relief as the nature of their cause may require.

Respectfully Submitted,

Robert N. Grossbart, Esquire
Grossbart, Portney, & Rosenberg, P.A.
1 N. Charles Street, Suite 1214
Baltimore, MD 21201
(410) 837-0590-T
(410) 837-0085-F
Email: Robert@grossbartlaw.com

**DEMAND FOR JURY TRIAL**

Plaintiffs, James and Kimberly Rider-Orazi demand a trial by jury on all causes of action set forth herein.

Respectfully Submitted,

Robert N. Grossbart, Esquire
Grossbart, Portney, & Rosenberg, P.A.
1 N. Charles Street, Suite 1214
Baltimore, MD 21201
(410) 837-0590-T
(410) 837-0085-F
Email: Robert@grossbartlaw.com

**CERTIFICATE OF MAILING**

I HEREBY CERTIFY that on Thursday, April 16, 2015, a copy of the foregoing was mailed first class, postage prepaid to; Bank of America, N.A., 450 American Street, Simi Valley, CA 93065; Bank of America, NC4-105-02-77, PO Box 26012, Greensboro, NC 27410; Bank of America, N.A., 1000 Samoset Drive, Newark, DE 19713; Bank of America, N.A., 100 North Tryon Street, Charlotte, NC 28255, Attention: Brian T. Moynihan, CEO, By Certified & Regular Mail; The Corporation Trust Incorporated, 351 West Camden Street, Baltimore, MD 21201, Resident Agent; Rushmore Loan Management Services, LLC, 2711 Centerville Road, Suite 400, Wilmington, DE 19808; Rushmore Loan Management Services, 15480 Laguna Canyon Road, Irvine, CA 92618; Rushmore Loan Management Services, PO Box 55004, Irvine, CA 92619; CSC-Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 820, Baltimore, MD 21202, Resident Agent; US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2013 SC3 TITLE TRUST, 60 Livingston Avenue, St. Paul, MN 55107; US Bank, National Association, 800 Nicollet Mall, BC-MN-H120, Minneapolis, MN 55402; The Corporation Trust Incorporated, 351 W. Camden Street, Baltimore, MD 21201, Resident Agent.