**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| **JAMES A. ORAZI**, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | Case No. 1:15-CV-01520-JFM |
| **BAC HOME LOANS SERVICING, LP,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS RUSHMORE'S AND US BANK'S**
**MOTION TO DISMISS**

Defendants Rushmore Loan Management Services LLC ("Rushmore") and US Bank NA, as Legal Title Trustee for Truman 2013 SC3 Title Trust ("US Bank") (collectively, "Defendants"), by counsel, hereby submit this memorandum in support of their motion to dismiss the Complaint [ECF 2] filed by Plaintiffs James A. Orazi and Kimberly Rider-Orazi (collectively, "Plaintiffs"), and state as follows:

**Introduction**

After failing to modify their $812,000.00 mortgage loan with co-Defendant Bank of America, N.A. ("BANA"), in May of 2012, Plaintiffs now seek to impose the terms of an unconsummated modification onto their current lender, US Bank, and loan servicer, Rushmore. Plaintiffs attempt to impute liability under the unconsummated modification upon Defendants, as assignees of certain rights to their mortgage. However, their contractual and semi-contractual claims fail against Defendants on multiple levels.

As a preliminary matter, Plaintiffs' allegations do not involve any misconduct by these Defendants. In fact, Rushmore's and US Bank's involvement in this lawsuit is solely based upon their status as the current lender and loan servicer. However, Plaintiffs cannot bootstrap claims

against BANA onto Defendants Rushmore and US Bank, particularly as Plaintiffs admit that no payments have been made on this loan since April of 2012.

Although the Complaint focuses on Plaintiffs' attempt to modify the loan in May of 2012, their allegations are insufficient to show that any loan modification agreement was consummated. Plaintiffs do not plausibly allege that they met the condition precedent to the alleged modification (i.e., that the loan be brought current); that BANA executed the agreement modifying its interest in the real property; or that there was sufficient consideration as the agreement merely modified amounts already owed.

Moreover, Plaintiffs' allegations rely not only on the existence of an enforceable agreement but on BANA's rescission of such alleged agreement.  Therefore, even assuming there was an enforceable loan modification agreement, Plaintiffs' own allegations establish that any such agreement was rescinded and cannot be resurrected three years later against BANA's assignees.

As a separate issue, Plaintiffs cannot be awarded the relief they seek against Defendants Rushmore and US Bank.  Specific performance under an agreement that was (at worst) unconsummated or (at best) rescinded is not available as against Rushmore and US Bank, the assignees of the loan.  Nor are they vicariously liable for the alleged damages caused by the purported misconduct of the prior lender/loan servicer.

Finally, as Plaintiffs' relationship with Defendants Rushmore and US Bank (and BANA) arise entirely from their mortgage loan, the quasi-contract claim for promissory estoppel is untenable.  Regardless, the allegations supporting a claim for promissory estoppel are insufficient.

Accordingly, Plaintiffs' claims should be dismissed as against Defendants in their entirety.

**Plaintiffs' Allegations**

*Origination of the Loan and Plaintiffs' Default*

On June 29, 2007, Plaintiffs purchased the real property located at 2503 Garsden Court, Phoenix, Maryland 21131 (the "Property") for the price of $1,160,000.00.  *See* Compl. at ¶ 11.  To finance this purchase, they obtained a purchase money loan (the "Loan") from co-Defendant Bank of America, N.A. ("BANA"), in the original principal amount of $812,000.00.  *Id.*[1]

Following Mr. Orazi's termination from his job in 2010, Plaintiffs began seeking a modification of the Loan.  *See id.* at ¶¶ 13-14.  In November of 2010, they fell behind on their mortgage payments.  *See id.* at ¶ 17.  On multiple occasions, both before and after their admitted default, Plaintiffs had their request for a permanent modification of their mortgage loan denied, or were otherwise told that they were ineligible for a permanent modification.  *See id.* at ¶¶ 15 (describing June 7, 2010 request denied), 19 (on April 6, 2011, BANA stated that it "could not offer any loan modification . . ."), 21 (indicating that Plaintiffs' attorney was "ultimately unsuccessful" in obtaining a loan modification), 24 (describing May 26, 2011 letter indicating that "Plaintiffs were not eligible for a loan modification . . ."), 26 (describing June 23, 2011 denial letter in which BANA indicated that it was "unable to reach an affordable mortgage payment").

*The Unconsummated LMA*

In August of 2011, "Mr. Orazi was informed of the possibility of a 'preemptive mortgage loan modification' **if his mortgage with [BANA] could be brought current**."  *Id.* at ¶ 29 (emphasis added).  To pay off their substantial arrearage, Plaintiffs obtained another loan from the Maryland Department of Housing and Community Development ("DHCD"), through its

---

[1]     Although Plaintiffs claim that they both obtained the Loan, they also assert that only Mr. Orazi signed the promissory note evidencing the Loan.  *See* Compl. at ¶ 11.

Emergency Loan Assistance Program ("EMA"), which was designed specifically to reinstate the Loan (the "Arrears-Only Loan").  *See id.* at ¶ 31; *id.* at Ex. E [ECF 2-1 at pp. 11-14] (Arrears-Only Loan Agreement).  Under the terms of the Arrears-Only Loan, Plaintiffs borrowed the maximum permitted amount of $50,000.00, of which $49,597.00 would be applied to reinstate the Loan.  *See id.* at ¶ 31; *id.* at Ex. E.  Additionally, the DHCD required that Plaintiffs provide $9,031.96 in certified funds, which would also be used to reinstate the Loan.  *See id.* at ¶ 31; *id.* at Ex. E.  In November of 2011, these funds were allegedly applied to the amounts owed under the Loan, and the Loan was brought "contractually current."  *Id.* at ¶ 32; *see* September 25, 2012 Letter from BANA, attached hereto as **Exhibit 1**.[2]

By letter dated April 6, 2012, BANA notified Plaintiffs that they were approved for a loan modification which would have had an "Anticipated Principal Balance" of $811,743.79, with a new, reduced interest rate of 2.000%.  *See* Compl. at ¶ 41; *id.* at Ex. F [ECF 2-1 at pp. 15-20] (April 6, 2012 Letter from BANA), attached hereto as **Exhibit 2**, for convenience.  In that letter, BANA instructed Plaintiffs to have the attached loan modification agreement (the "LMA") signed, notarized, and returned to BANA.  *See* **Ex. 2** at pp. 1-2.  Additionally, the April 6, 2012 Letter provided that: "[i]n order for this modification to become effective on 05/01/2012 you must make your normal monthly payment for 04/01/2012 in the amount of $5,667.51."  **Ex. 2** at p. 1 (emphasis removed); *see also* Compl. at ¶ 41.

In response, Plaintiffs claim that they arranged for the LMA to be signed, notarized, and sent to BANA on April 17, 2012.  *See* Compl. at ¶ 43; *see also* **Ex. 2**.  On April 23, 2012, they allegedly "made a payment to [BANA] by telephone in the amount of $5,667.51 as instructed . . ."

---

[2]     This unauthenticated letter was attached to the Complaint as a portion of Exhibit J, and is attached separately to this memorandum for convenience.

*Id.* at ¶ 44.  Notably, Plaintiffs do not claim that they received a copy of the LMA back from BANA, or that they every obtained a copy of the LMA bearing BANA's signature.  Rather, on May 7, 2012, Plaintiffs received an email indicating "that payments were not applied correctly," and that BANA "refused to recognize and honor the executed LMA."  Compl. at ¶ 45; *see id.* at Ex. H [ECF 2-1 at p. 23].

Thereafter, Plaintiffs were informed that, in May of 2012, the DHCD demanded that BANA return those funds disbursed pursuant to the Arrears-Only Loan, resulting in Plaintiffs again being delinquent on the Loan, and rendering Plaintiffs ineligible for the pre-emptive modification.  *See* **Ex. 1** (September 25, 2012 Letter from BANA) at p. 3 ("[I]n May 2012, the [DHCD] requested the funds be returned, and as such, your account was placed back into delinquency status, making you ineligible for the pre-emptive modification."); *see also* Compl. at ¶ 47 ("Plaintiffs were informed that monies disbursed by [DHCD] to [BANA] had been sent back to [DHCD].  The return of said funds resulted in a delinquency status.").  By letter dated October 24, 2012, Plaintiffs were informed that the Loan had been referred for foreclosure.  *See* Compl. at ¶ 49; *id.* at Ex. I.  And, by letter dated November 19, 2012, BANA again confirmed "that a pre-emptive loan modification was not an option."  *Id.* at ¶ 50; *see also* **Ex. 1** (September 25, 2012 Letter from BANA) at p. 3 (indicating that "[t]he pre-emptive modification was then cancelled in June 2012, as your loan did not qualify due to the delinquency status of the account.").

In 2014, the servicing rights to the Loan were eventually transferred to Rushmore; while the deed of trust securing the Loan was assigned to US Bank.  *See* Compl. at ¶¶ 60-61.

### *The Present Lawsuit*

Although Plaintiffs' allegations are primarily directed at BANA, they nevertheless include the current lender, US Bank, and servicer, Rushmore, under the Loan so as to accomplish two

goals.  First, Plaintiffs seek to impose a loan modification on Defendants, despite BANA having rejected this exact modification nearly three (3) years ago, and without tendering payments into this Court.  Second, Plaintiffs attempt to hold Defendants liable for the alleged misconduct of BANA, the assignor of rights in the Loan.  To accomplish these goals, Plaintiffs assert four claims against all Defendants, lumping them together indiscriminately:

Under Count I (specific performance), Plaintiffs seek affirmation from this Court that the LMA is enforceable against Defendants.  Specifically, they request rulings that: "the LMA remains in full force and effect"; "pursuant to the LMA[,] Plaintiffs retain their exclusive rights to the terms of the LMA"; "Plaintiffs are in compliance with the LMA"; and "Defendants have not complied with the LMA."  Compl. at p. 13, Count I a*d damnum*.

In light of the relief sought, Count II (declaratory judgment) proceeds nearly identically to Count I.  The only exception being that, under Count II, Plaintiffs also seek a declaration that "the reportings against Plaintiffs credit be reversed as if no reportings had been made by Defendants against Plaintiffs' credit score."  *Id.* at p. 14, Count II a*d damnum*.

Under Count III (breach of contract), Plaintiffs allege that the LMA constituted a binding contract between them and BANA.  *See id.* at ¶ 73.  According to Plaintiffs, after BANA "accepted to be bound by the LMA," *id.*, the bank "failed to honor the LMA," *id.* at ¶ 75, and "unilaterally rescinded the LMA . . ."  *Id.* at ¶ 76.  In addition to the same declarations sought under Count I, ignoring that they must make an election of remedies,[3] Plaintiffs demand damages in the amount of $500,000.00, including attorney's fees and pre- and post-judgment interest.  *See id.* at p. 16, Count III *ad damnum*.

---

[3]     *Cf. Merritt v. Craig*, 130 Md. App. 350, 366, 746 A.2d 923, 931 (2000) ("[A litigant] may not successfully rescind the contract while simultaneously recovering compensatory and punitive damages. . .").

Finally, under Count IV (promissory estoppel), Plaintiffs complain that BANA "made a promise under the LMA which [Defendants] should reasonably have expected would induce Plaintiffs to take out a third mortgage from [DHCD] and from acting or forbearing on the obligations and performances under the original Loan Agreement by virtue of the material changes to the interest rate and monthly payment under the LMA." *Id.* at ¶ 84. Asserting that "[i]njustice can be avoided only though enforcement of the LMA," Plaintiffs again repeat the declaratory relief sought under Count I, and seek the same monetary damages demanded under Count III. *See id.* at pp. 17-18, Count IV *ad damnum*.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[P]laintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). Conclusory statements are not accepted as true. *Id*. Bare assertions, along with unwarranted inferences, unreasonable conclusions, or arguments will not be considered. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681-82 (2009); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009). Further, when considering a motion to dismiss, the Court is not required to accept the legal conclusions in a complaint, as those are questions of law for the Court to decide. *Iqbal*, 556 U.S. at 678 (citation omitted).

### Discussion

I.   **Plaintiffs' claims are insufficiently plead against Defendants.  Merely lumping Defendants together in a few allegations and *ad damnum* clauses fails to satisfy Rule 8.**

Plaintiffs fail to state any claim against Defendants Rushmore and US Bank.  In fact, the Complaint barely mentions these parties, and includes no factual allegation identifying any misconduct on their part.

Rather, the Complaint is focused entirely on BANA's actions.  Specifically, Plaintiffs assert that, in April of 2012, BANA tendered them with the LMA for their signature, and that they signed and returned the LMA to BANA.  *See* Compl. at ¶¶ 41, 43.  They complain that, by email on May 7, 2012, BANA indicated that Plaintiffs' prior payments "were not applied correctly," and, at that time, "refused to recognize and honor the executed LMA."  *Id.* at ¶ 45.  In September of 2012 (if not earlier), BANA informed Plaintiffs that the "monies disbursed by [DHCD] to [BANA] had been sent back to [DHCD]," *see id.* at ¶ 47, making them "ineligible for the pre-emptive modification," and resulting in their account being placed into delinquency status.  **Ex. 1** at p. 3; *see also* Compl. at ¶ 47.

However, none of these allegations involve any misconduct by Defendants Rushmore and US Bank.  As alleged in the Complaint, their involvement in this action arises solely as a result of their being subsequently assigned an interest in the Loan.  *See* Compl. at ¶¶ 60-61.  To the extent Plaintiffs complain of Defendant Rushmore issuing a notice of foreclosure, such claims are undermined by their admission that no payments have been made on the Loan since April of 2012.  Instead, they allege that, at an undisclosed time, they have placed an unknown amount into an unidentified money market account "for the purposes of this litigation."  *Id.* at ¶ 59.

Beyond these sparse allegations, the Complaint fails to discuss Defendants Rushmore and US Bank.  Although the *ad damnum* clauses seek undifferentiated damages against all Defendants,

*see id.* at *passim*, merely lumping Rushmore and US Bank under the label of "Defendants" in a few *ad damnum* clauses is insufficient for Plaintiffs to bootstrap claims against BANA upon the Defendants.  *See Id.*  "A plaintiff does not satisfy Rule 8 when the complaint 'lump[s] all the defendants together and fail[s] to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong.'"  *Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F.Supp.2d 452, 455 (D. Md. 2005) (quoting *Appalachian Enters., Inc. v. ePayment Solutions Ltd.*, 2004 U.S. Dist. Lexis 24657, 2004 WL 2813121, at *6 (S.D.N.Y. 2004)); *see also Crouch v. City of Hyattsville*, 2010 U.S. Dist. Lexis 123896, at *16-17 (D. Md. 2010) (same). Thus, because no wrongful conduct by the Defendants is identified, Plaintiffs have failed to satisfy even the forgiving standard under Rule 8 of the Federal Rules of Civil Procedurem particularly as to any claim for damages.[4]

## II.     Plaintiffs fail to sufficiently plead that the LMA is an enforceable contract.

Count I (specific performance), Count II (declaratory judgment), and Count III (breach of contract) should be dismissed because these claims rely on the faulty premise that the LMA constituted an enforceable contract between Plaintiffs and BANA.  It does not.  Even if it had, Plaintiffs acknowledge that the LMA was rescinded, and therefore cannot be enforced against BANA's assignees three (3) years after such rescission.[5]

---

[4]     Plaintiffs' pleading is especially deficient with respect to their claims regarding their credit score.  Although Plaintiffs seem to impute some undescribed damage to their credit score to Defendants, *see* Compl. at p. 14, Count II *ad damnum*; *see also id.* at ¶ 81, they fail to identify which Defendant provided negative reporting, to which agency, and fail to describe how such reporting caused them harm.  Moreover, as Plaintiffs admit that they have made no payments on their Loan since April of 2012, they fail to show that reporting their delinquency was false or unjustified.

[5]     As discussed separately below, Plaintiffs also cannot maintain specific performance and damages claims against Defendants, as assignees of the Loan from BANA.

The relief sought under the first three counts depends upon the LMA constituting an enforceable agreement.[6]  Under all three counts, Plaintiffs seeks a ruling "that the LMA remains in full force and effect."  Compl. at pp. 13, 14, 16.  Further, under Counts I and III, Plaintiffs demand rulings (i) "that pursuant to the LMA[,] Plaintiffs retain their exclusive rights to the terms of the LMA"; (ii) "that Plaintiffs are in compliance with the LMA"; and (iii) "that Defendants have not complied with the LMA."  *Id.* at pp. 13, 16.

As discussed below, Plaintiffs have failed to sufficiently plead the existence of a binding, enforceable agreement.  First, although they acknowledge that bringing the Loan current was a necessary condition precedent to the LMA, they do not dispute that, prior to BANA's accepting the LMA, the DHCD demanded a return of the proceeds of the Arrears-Only Loan, perpetuating Plaintiffs' delinquency on the Loan.  Second, Plaintiffs have failed to plausibly plead that BANA accepted the LMA sufficient to satisfy the statute of frauds, particularly as Plaintiffs allege that BANA refused to honor the LMA as early as May 7, 2012.  Third, the Complaint demonstrates that the LMA lacked any consideration, as all payments were already owed under the original, unmodified Loan.  Fourth, even if the LMA was, at one point, enforceable against BANA, Plaintiffs concede that the LMA was rescinded shortly thereafter due to the DHCD withdrawing funding, such rescission restoring the parties to the original terms of the Loan.

---

[6]     As a preliminary matter, Plaintiffs never claim that Mrs. Orazi is not an obligor on the promissory note evidencing the Loan, or apparently the LMA.  Indeed, Plaintiffs claim that Mrs. Orazi did not execute the promissory note, *see* Compl. at ¶ 11; and only signed the LMA with the apparent disclaimer, "as the non-borrowing spouse."  *See* Compl. at ¶ 43; *see also* **Ex. 2** (April 6, 2012 Letter from BANA with LMA attached).

Accordingly, Count I (specific performance), Count II (declaratory judgment), and Count III (breach of contract) should all be dismissed with prejudice because they are premised on the LMA being an enforceable contract, and it is not.[7]

**A.     Plaintiffs admit that a condition precedent to consummating the LMA—i.e., the requirement that the Loan be brought current—was not satisfied.**

Since Plaintiffs first learned of the possibility of a "preemptive loan modification," they were aware that bringing the Loan current was a condition precedent to obtaining a modification. *See* Compl. at ¶ 29.  In fact, Plaintiffs claim that, due to this condition, they obtained the Arrears-Only Loan from DHCD to pay Mr. Orazi's arrearage on the Loan.  *See id.* at ¶ 31.  Nevertheless, Plaintiffs do not dispute that, upon DHCD's demand, the proceeds of the Arrears-Only Loan were returned.  *See* **Ex. 1** (September 25, 2012 Letter from BANA) at p. 3; *see also* Compl. at ¶ 47. Therefore, as Plaintiffs do not allege that this condition was satisfied, they have failed to sufficiently state that the LMA was consummated, and formed an enforceable contract.

In considering the enforceability of a contract, a condition precedent is "a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises."  *All State Home Mortg., Inc. v. Daniel*, 187 Md. App. 166, 182 (2009) (citing *Chirichella v. Erwin*, 270 Md. 178, 182, 310 A.2d 555 (1973)).  "[W]here a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by non-performance until the condition precedent is either performed or excused."  *All State Home Mortg.*, 187 Md. App. at 182; s*ee also Pradhan v. Maisel*, 26 Md. App. 671, 677 (1975) ("We hardly need repeat that no contractual duty arises when there is an unfulfilled condition precedent to a contract . . .").

---

[7]     To the extent Plaintiffs seek the same relief under Count IV (promissory estoppel), though not seeking to enforce a contract, that count should also be dismissed.

Here, Plaintiffs acknowledge that bringing the Loan current was a condition precedent to consummating the LMA.  According to the Complaint, Plaintiffs were told, as early as August 15, 2011, that a "preemptive loan modification" would only be possible "if [Mr. Orazi's] mortgage with [BANA] could be brought current."  Compl. at ¶ 29.  Thereafter, on September 19, 2011, Mr. Orazi re-affirmed this understanding by asking an employee of BANA whether they would obtain a loan modification "if the mortgage was brought current."  *Id.* at ¶ 30; *see also id.* at Ex. D [ECF 2-1 at p. 8] (Emails with BANA).  Indeed, Plaintiffs obtained the Arrears-Only Loan in October of 2011 to assist in making a $58,628.96 payment to BANA to satisfy this condition.  *See id.* at ¶ 31; *see also id.* at Ex. E [ECF 2-1 at pp. 11-14] (Arrears-Only Loan Agreement).[8]  Further, consistent with the condition that the Loan be brought current prior to consummating a modification, BANA required that Plaintiffs make their "normal monthly payment for 04/01/2012 in the amount of $5,667.51"  *Id.* at ¶ 41; *see also* **Ex. 2** (April 6, 2012 Letter from BANA).

Nevertheless, this condition was not satisfied in two separate ways.  First, although Plaintiffs obtained the Arrears-Only Loan to bring the Loan current through October of 2011, they fell behind on the Loan immediately thereafter, but before the alleged consummation of the LMA.  As stated by Plaintiffs' own attorney:

> [T]he disbursement [of proceeds from the Arrears-Only Loan] brought [Mr. Pineda's] account current through October, meaning he would still have been delinquent for November, December and January.  Even if Bank of America contends that the funds brought the account current through November since they were applied to the account on November 22, the account would still be delinquent for December and January . . ."

---

[8]     As indicated in the Arrears-Only Loan Agreement, DHCD would disburse to BANA the $49,597.00 in loan proceeds, as well as the $9,031.96 in certified funds which Plaintiffs were required to bring.  *See* Compl. at Ex. E at § 3(b) (providing that both amounts will be sent to the servicer).

Compl. at <u>Ex. J</u> (January 30, 2013 Letter) [ECF 2-1 at p. 28]; *see also* **Ex. 1** at p. 3. ("Our records indicate you're your loan is currently paid through January 1, 2012, and is due for the February 1, 2012, monthly mortgage installment and is in default under the loan documents.").

Second, prior to BANA accepting the LMA, DHCD withdrew funding of the Arrears-Only Loan; and BANA complied with DHCD's demand for the return of such funds.  *See* **Ex. 1** (September 25, 2012 Letter from BANA) at p. 3 ("[I]n May 2012, the [DHCD] requested the funds be returned, and as such, your account was placed back into delinquency status, making you ineligible for the pre-emptive modification."); *see also* Compl. at ¶ 47 ("Plaintiffs were informed that monies disbursed by [DHCD] to [BANA] had been sent back to [DHCD].  The return of said funds resulted in a delinquency status.").  At no point do Plaintiffs contend that they obtained replacement funding for the $49,597.00 returned to the DHCD.  Nor do Plaintiffs contend that they otherwise brought their Loan current, which would require—in addition to tendering the funds withdrawn by the DHCD—that Plaintiffs tender all subsequent payments owed under the Loan, thereby barring any claim for specific performance.

Thus, due to Plaintiffs' failure to plausibly allege that the condition precedent—i.e., the brining current of the Loan—was satisfied, the Complaint fails to establish the existence of an enforceable contract.

> **B.** **Plaintiffs' allegations fail to demonstrate that the LMA was executed by BANA.  Therefore, under the statute of frauds, this document cannot be enforceable against BANA, or its assigns.**

Under Maryland law, "[n]o action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing **and signed by the party to be charged** or some other person lawfully authorized by him."  Md. Code, RP § 5-104 (emphasis added).  In *Barry v. EMC Mortg. Corp.*, this Court affirmed that, where an "oral restructure agreement

proposed permanent modification of an existing mortgage," the purported modification is subject

to the Maryland statute of frauds. *Barry v. EMC Mortg. Corp.*, 2012 U.S. Dist. Lexis 116500, at

*17 (D. Md. 2012) ("Because a mortgage is a contract concerning land, it follows that the oral

restructure agreement falls within the statute of frauds."); *accord Campbell v. IndyMac Bank, FSB*,

2010 U.S. Dist. Lexis 7642, at *7 (D. Md. 2010) (determining that, because an oral contract

modified a home loan and "thus concerned an interest in real property," it falls within the statute

of frauds and was unenforceable); *see also Calomiris v. Woods*, 353 Md. 425, 445 (1999)

(determining that a mortgage contract falls within the statute of frauds, and noting that "strict

enforcement of the Statute of Frauds should apply to prevent the admission of parol evidence

inconsistent with the terms of the contract").

Here, although Plaintiffs allege that BANA executed the LMA, *see* Compl. at ¶ 64, this is

inconsistent with their prior allegations as well as the copy of the LMA attached to the Complaint.

Specifically, throughout the Complaint's factual allegations, Plaintiffs never claim that BANA

returned a fully executed copy of the LMA to them. Nor do they claim that BANA indicated their

acceptance of the LMA. To the contrary, Plaintiffs allege that, on May 7, 2012, shortly after they

submitted the LMA, "[BANA] refused to recognize and honor the executed LMA." *Id.* at ¶ 45.

Likewise, the copy of the LMA attached to the Complaint is not executed by BANA. Although it

includes a signature block for BANA to express its acceptance and agreement to the terms of the

modification; this area is blank. *See id.* at Ex. F; **Ex. 2** (April 6, 2012 Letter from BANA with

LMA attached) at p. 6.[9]

---

[9]     On at least two occasions, this Court has rejected claims that the lender's or loan servicer's
signature on a loan modification was a condition precedent to an agreement. *See Ardalan Azimirad
v. HSBC Mortg. Corp.*, 2011 U.S. Dist. Lexis 40080, at *11 (D. Md. 2011); *Adam v. Wells Fargo
Bank, N.A.*, 2011 U.S. Dist. Lexis 96604, at *44-45 (D. Md. 2011). However, in neither opinion,
did this Court discuss applicability of the statute of frauds.

Given the inconsistency between the single, conclusory allegation that BANA executed the LMA and Plaintiffs' exhibit and prior allegations, the Complaint fails to sufficient plead that BANA executed the LMA. *See Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)) ("When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail."); *accord Hosack v. Utopian Wireless Corp.*, 2011 U.S. Dist. Lexis 48687, 2011 WL 1743297, at *5 (D. Md. 2011) ("[A] complaint's unsupported allegation may be overcome on a motion to dismiss by relevant exhibits.  Similarly, when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim.").  Accordingly, Counts I, II, and III should be dismissed for failure to state claims arising under an enforceable contract.

### C.      The LMA lacked consideration.

"To be binding and enforceable, contracts ordinarily require consideration. . . . In Maryland, consideration may be established by showing 'a benefit to the promisor or a detriment to the promisee.'" *Cheek v. United Healthcare of the Mid- Atl., Inc.*, 835 A.2d 656, 661 (2003) (citing *Harford County v. Town of Bel Air*, 348 Md. 363, 381-82, 704 A.2d 421, 430 (1998)).  However, past consideration will not support the existence of a new agreement. *See Allen v. CitiMortgage, Inc.*, 2011 U.S. Dist. Lexis 86077, at *15 (D. Md. 2011) (citing *Wickman v. Kane*, 136 Md. App. 554, 766 A.2d 241, 246 (2001)); *Reece v. Reece*, 239 Md. 649, 659 (1965) ("The general rule is that past consideration is insufficient to support a present promise.").  Indeed, in the context of a modification of a pre-existing loan, this Court has recognized that "a debtor incurs no legal detriment and a creditor receives no benefit when the debtor pays that which he already owes." *Glenwood Range Co. v. Universal Major Elec. Appliances, Inc.*, 124 F. Supp. 103, 117 (D. Md. 1954); *see also Allen*, 2011 U.S. Dist. Lexis 86077, at *16-17 (observing that the lender was

"correct that the modified loan payments paid by the [borrowers] do not constitute consideration to support the [Trial Period Plan] Agreement [under the federal Home Assistance Modification Program]," however finding that other terms of the federally-regulated temporary loan modification support the existence of separate consideration).

Here, Plaintiffs' alleged burden was no more than what was already owed under the Loan. As a condition precedent to consummating the LMA, Plaintiffs were required to bring the Loan current.  *See* Compl. at ¶ 29.  To accomplish this, on their own accord, Plaintiffs obtained the Arrears-Only Loan from the DHCD, which resulted in the DHCD providing nearly $60,000.00 to BANA to bring the Loan current.  *See id.* at Ex. E (Arrears-Only Loan Agreement) (providing for $49,597.00 in proceeds, as well as $9,031.96 in certified funds from Plaintiffs, to be applied to reinstate the Loan); *see also id.* at ¶ 31.

Throughout the Complaint Plaintiffs contend that the payment of $5,667.51 on or around April 23, 2012, constitutes consideration for the LMA.  *See* Compl. at ¶ 70 ("The LMA is a binding, enforceable agreement signed and accepted voluntarily by the parties thereto upon the receipt of the consideration of the April 1, 2012 payment of $5,667.51 under the LMA"); *see also* Compl. at ¶¶ 44, 64, 74.  However, Plaintiffs own allegations support that this payment represents amounts already owed under the Loan.  Specifically, in the April 6, 2012 letter from BANA, Plaintiffs were informed that, in order for the LMA to become effective, they must make their "**normal monthly payment**" for April 1, 2012, in the amount of $5,667.51.  **Ex. 2** (emphasis in original); *see* Compl. at ¶ 41.  Indeed, Plaintiffs' own attorney acknowledged that, following the settlement of the Arrears-Only Loan, they were only brought current through October of 2011, and proceeded to fall behind on their payments (again) in the following months.  *See* Compl. at Ex. J (January 30, 2013 Letter) [ECF 2-1 at p. 28]; *see also* **Ex. 1** at p. 3.  BANA's request for the $5,667.51 payment

16

was merely reiterating that Plaintiffs were required to bring the Loan current prior to modifying the Loan pursuant to the terms of the LMA.  Thus, as this amount was already owed by Plaintiffs, who were (again) behind on their Loan payments, this cannot constitute adequate consideration for the LMA.

      **D.**      **Regardless of whether the LMA was, at one point, enforceable, Plaintiffs claim that BANA rescinded the LMA, restoring the parties to the original, unmodified Loan.**

Ignoring the pleading and legal deficiencies discussed above, and interpreting Plaintiffs' allegations in the light most favorably to them, the Complaint still fails to impose the obligations under the LMA onto Defendants Rushmore and US Bank, which were assigned interests in the Loan years later.  Notably, Plaintiffs acknowledge that, even if the LMA was, at one point, enforceable against BANA, it was rescinded.  As this restored the complete terms of the original, unmodified Loan, which was thereafter transferred to Defendants Rushmore and US Bank, Plaintiffs cannot resurrect the LMA and impose its obligations onto BANA's assignees.

In *Maslow v. Vanguri*, the Court of Appeals of Maryland discussed the effect of rescission on a contract.  *See Maslow v. Vanguri*, 168 Md. App. 298, 323 (2006).  The Court noted that definition afforded to the term "rescission of contract" by Black's Law Dictionary:

> **Rescission of Contract**.  To avoid, or cancel a contract; particularly, nullifying a contract by the act of a party. ***The right of rescission is the right to cancel (rescind) a contract upon the occurrence of certain kinds of default by the other contracting party***.  To declare a contract void in its inception and to put an end to it as if it never were. . . .  A "rescission" amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination, and it may be effected by mutual agreement of parties, or by one of the parties declaring rescission of contract without consent of other if a legally sufficient ground therefor exists, or by applying to courts for a decree of rescission. . . .  **It necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. Nonetheless, not every default in a contract will give rise to a right of rescission**. . . .

> An action of an equitable nature in which a party seeks to be relieved
> of his obligations under a contract on the grounds of mutual mistake,
> fraud, impossibility, etc.

*Maslow*, 168 Md. App. at 323 (citing Black's Law Dictionary 1306-07 (6th ed. 1990)); cited in

*Burson v. Capps*, 440 Md. 328, 346-347 (2014).  Upon rescission, a contract is void *ab initio*,

restoring the parties to the status quo.  *See Dialist Co. v. Pulford*, 42 Md. App. 173, 177 n.3, 399

A.2d 1374 (1979) ("The rescission of a contract involves voiding it ab initio and returning the

parties to the status quo ante."); *cited in Barufaldi v. Ocean City*, 196 Md. App. 1, 22 n. 7 (2010).

Where the contract being rescinded is a modification of another agreement, rescission would

restore the terms of the original, unmodified contract.  *See, e.g., Kane Realty Co. v. National*

*Children's Stores, Inc.*, 169 Misc. 699, 702 (N.Y. Mun. Ct. 1938) ("So where a contract which is

a modification of another is rescinded, the party may resort to his rights under the original

contract.") (quotations omitted).

   Here, as early as May 7, 2012, Plaintiffs were notified that BANA "refused to recognize

and honor the executed LMA."  Compl. at ¶ 45.  Thus, Plaintiffs take the position that BANA

"unilaterally rescinded the LMA . . ."  *Id.* at ¶ 76.  Notably, this is consistent with the September

25, 2012 Letter from BANA which was also attached to the Complaint.  *See* **Ex. 1** (September 25,

2012 Letter from BANA) at p. 3; *see also* Compl. at ¶ 47.  However, the Complaint cannot allege

that the LMA was rescinded **and** try to impose its terms on Defendants because such relief does

not result from a rescinded agreement.  To the extent Plaintiffs allege that the LMA was wrongfully

rescinded,[10] at best, they may assert a claim for damages against the rescinding party, not the

assignees of the original, unmodified agreement.  Accordingly, Count I (specific performance),

---

[10]     Such claim would still fail because, as explained above, the LMA was never consummated.

Count II (declaratory judgment), and Count III (breach of contract) should be dismissed with prejudice as against Defendants Rushmore and US Bank.

### III.     Plaintiffs are not entitled to specific performance against Defendants.

Even if Plaintiffs had adequately plead that the LMA was an enforceable agreement with BANA, which BANA thereafter rescinded, Plaintiffs cannot impose the terms of such contract on Defendants Rushmore and US Bank, as the assignees of the original, unmodified Loan.  In the Complaint, Plaintiffs seek specific performance of the LMA under Count I.  *See* Compl. at ¶ 67. Notably, as a preliminary matter, Count I does not demand that Defendants perform any specific obligation owed under the LMA.  Nor could it, as Plaintiffs admit that their Loan has not been current for at least three (3) years.  Thus, as these allegations do not, as a practical matter, seek specific performance of any obligation owed under the LMA, Count I is insufficiently plead.  Nor is such claim timely, nearly three years later, particularly when their funding was withdrawn rendering them unable to perform under the conditions required for the LMA.  *See Cutler v. Sugarman Org., Ltd.*, 88 Md. App. 567, 586, 596 A.2d 105, 114 (1991) ("[O]ne who seeks specific performance must be able to show that 'he is ready and desirous to comply with the contract on his part, and has the ability to perform.'").

Nevertheless, Plaintiffs could not maintain an action of specific performance against Defendants Rushmore and US Bank even if they had identified an obligation to be performed.  As noted *supra*, they do not allege any affirmative action taken by these Defendants.  Because their allegations of wrongdoing do not involve either Rushmore or US Bank, specific performance is not appropriate against such parties.  Rather, Plaintiffs remedy, *vel non*, is solely against BANA for their alleged damages.  *See Hupp v. George R. Rembold Bldg. Co.*, 279 Md. 597, 601, 369 A.2d 1048, 1051 (1977) ("It has long been established that if the remedy of specific performance is possible when the vendee brings suit, but while the action is pending, a vendor disables himself

from performing his contract, damages may be awarded in lieu of specific performance, . . . *See Kappelman v. Bowie*, 201 Md. 86, 90, 93 A. 2d 266, 268 (1952) ('equity may refuse . . . to . . . enforce a hard bargain').").  Thus, the remedy of specific performance is unavailable to Plaintiffs as against Defendants Rushmore and US Bank, the assignees of certain rights under the Loan.

**IV.     Defendants do not impliedly assume liability for actions taken by BANA.**

As a means to circumvent the Complaint's insufficient pleading, Plaintiffs seem to assert that Defendants Rushmore and US Bank are impliedly liable for BANA's actions in connection with the putative LMA.  However, any logic to this assumption breaks down upon closer review. Notably, all of Plaintiffs' Counts depend upon the putative LMA constituting a binding contract between themselves and BANA.  Yet, Plaintiffs neither produce a valid copy of the LMA executed by both parties nor allege that Defendants were assigned an interest in LMA.  To the contrary, they claim that, even though the LMA was, at one point, allegedly enforceable, it was later rescinded by BANA.  Thus, if rescinded, Defendants would obtain the rights and interests in the original, unmodified Loan.  Further, Plaintiffs' theory of implied assumption of liability by an assignee has been repeatedly rejected.

In Maryland, "there is no implied assumption by an assignee of his assignor's obligations under the original contract merely by virtue of the assignment."  *Homa v. Friendly Mobile Manor*, 93 Md. App. 337, 353, 612 A.2d 322, 329 (1992) (citing *P/T Ltd. v. Friendly Mobile Manor, Inc.*, 79 Md. App. 227, 234, 556 A.2d 694 (1989)).  Rather, to be liable under contract, assignee must have assumed liability "expressly."  *See Pumphrey v. Kehoe*, 261 Md. 496, 506, 276 A.2d 194 (1971) ("This, however, is a matter of interpretation of the written contract and our predecessors have held that it is required that the assignee must expressly assume these duties, there being no implication of assumption by the mere assignment.").  Even when the assignee assumes the duties of the assignor, the assignor remains liable under the contract and answerable in damages if the

assignee's performance is not in strict fulfillment of the contract.  *See Homa*, 93 Md. App. at 353,

612 A.2d at 330 (citation omitted).

This Court has rejected the notion that a subsequent lender and loan servicer assume

liability on affirmative claims against a prior lender.  In *Brown v. Bank of Am., N.A.*, 2012 U.S.

Dist. Lexis 13168 (D. Md. 2012), this Court determined that the misrepresentations alleged by the

borrower were actually made by the original lender, not the defendants, who were the current

lender and loan servicer.  *Brown*, 2012 U.S. Dist. Lexis 13168, at *11 ("It is noteworthy, however,

that Brown's injuries were caused by [the original lender's] failure to apply Brown's payments to

her account, not any false statements by Defendants.").  Dismissing the fraud claim, this Court

emphasized that the lender and loan servicer could not be held liable under a theory of implied

assignee liability, stating:

> Since Defendants did not trigger Brown's injuries or her attempts to prevent
> foreclosure, Brown's claim relies on the following supposition: in assuming the
> mortgage, Defendants became subject to Brown's claims against [the original
> lender].  Yet, it is undisputable that Maryland common law rejects implied assignee
> liability.  *See Fulmore v. Premier Fin. Corp.*, No. JFM-09-2028, 2010 U.S. Dist.
> Lexis 116622, 2010 WL 4286362, at *2 (D. Md. Oct. 29, 2010) (citing *P/T Ltd. II
> v. Friendly Mobile Manor, Inc.*, 79 Md. App. 227, 234, 556 A.2d 694 (Ct. Spec.
> App. 1989)).  Therefore, Defendants—the assignees—are not liable for [the
> original lender's] alleged misconduct.

*Brown*, 2012 U.S. Dist. Lexis 13168, at *11.  For that reason, this Court dismissed the borrower's

fraud claim.  *See id.* at *13 ("Brown's claims are affirmative, not defensive, and thus subject to

the law against assignee liability.  In short, since Defendants have not filed any claims against

Brown, her argument is nonsensical and could not survive a motion to dismiss."); *see also*

*Onwumbiko v. JP Morgan Chase Bank, N.A.*, 2012 U.S. Dist. Lexis 170299, at *8 (D. Md. 2012)

(determining that "it is undisputable that Maryland common law rejects implied assignee

liability"); *Galante v. Ocwen Loan Servicing LLC*, 2014 U.S. Dist. Lexis 98049, at *68 (D. Md.

July 18, 2014) (same); *Jones v. Bank of N.Y. Mellon*, 2014 U.S. Dist. Lexis 102898, at *11 (D. Md. July 29, 2014) (same).

Here, despite Plaintiffs' allegations to the contrary, Defendants Rushmore and US Bank cannot be held liable merely because they have subsequently received certain interests in the original, unmodified Loan agreement.  Simply put, in Maryland, assumption of liability cannot be implied.  Thus, as Plaintiffs lack any basis for asserting Count III (breach of contract) against Defendants Rushmore and US Bank, it should be dismissed with prejudice.

**V.    As Defendants' relationship with Plaintiffs arises entirely from the original, unmodified Loan, any claim for promissory estoppel (Count IV) is untenable.**

Under Maryland law, where there is a contract between the parties, quasi-contract claims such as promissory estoppel are untenable.  *See Ver Brycke v. Ver Brycke*, 379 Md. 669, 693 n.9, 843 A.2d 758, 772 n.9 (2004) ("[p]romissory estoppel claims, which are quasi-contract claims, would have been untenable had they argued that a contract had existed between [the parties].") "[T]the general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'  *Id.* (quoting *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96, 747 A.2d 600, 607 (2000)); *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. 766, 776, 471 A.2d 1121, 1126 (1984).

Here, Plaintiffs' relationship with Defendants Rushmore and US Bank arises from and depends entirely on the promissory note evidencing the Loan and the deed of trust securing their indebtedness.  Thus, any claim against them arises and depends upon such contractual relationship, precluding a promissory estoppel claim (Count IV) as a matter of law.

Moreover, the promissory estoppel claim is insufficiently plead.  At most, Plaintiffs claim that they obtained the Arrears-Only Loan in reliance on the April 6, 2012 letter sent by BANA in

which they were advised the Loan would be modified.  *See* Compl. at ¶ 84.  But, this pleading has two significant problems.  First, they could not have taken out the Arrears-Only Loan in reliance of any promise in the LMA because they obtained the Arrears-Only Loan more than seven (7) months prior to the LMA being offered.  In fact, the entire purpose of the Arrears-Only Loan was to satisfy a condition precedent to the LMA: that the Plaintiffs had to bring the Loan current.  Second, even if Plaintiffs detrimentally relied upon the LMA, such reliance is not attributable to either Rushmore or US Bank because they made no promises to the Plaintiffs.  Indeed, neither of these parties had even been assigned an interest in the Loan at the time Plaintiffs attempted to obtain the LMA.

As to their reliance, Plaintiffs claim that they did not make their mortgage payments, but "made the payments pursuant to the LMA to a money market account until a resolution would be reached."  *Id.* at ¶ 86.  However, such reliance is not detrimental, but self-serving.  Moreover, it is not reasonable in light of the timing of the relevant events.  Notably, Plaintiffs received the LMA in April 2012, but were notified on May 7, 2012, that there was an issue regarding payments under LMA.  *See id.* at ¶¶ 44-45.  As a result, they were notified, as early as May 7, 2012, that BANA would not recognize and be bound by the LMA. *See id.* at ¶ 45. Despite such knowledge, Plaintiffs pretended that their Loan was modified and segregated funds in their own account.  Such conduct is not reasonable.

Additionally, Plaintiffs have failed to plausibly plead that this reliance caused them injury.  Indeed, "where a plaintiff does not allege facts that could establish that she would have been successful in delaying the foreclosure sale, renegotiating her loan, and retaining possession of her home, dismissal is proper because the Complaint lacks a connection between her reliance on the alleged promise and losing her home to sustain her claim for estoppel." *Graybill v. Wells Fargo*

23

*Bank, N.A.*, 953 F. Supp. 2d 1091, 1105 (N.D. Cal. 2013) (citing *Nong v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. Lexis 136464, at *8-9 (C.D. Cal. Dec. 6, 2010)).

Here, Plaintiffs purport to identify some actions they took as if BANA had made some promise to them, despite being told expressly that the LMA was rejected. *See* **Ex. 1**; Compl. at ¶¶ 45, 47, 49, 50. However, they acknowledge that they could not fulfill their contractual obligations under the Loan. Moreover, they admit they have defaulted on the Arrears-Only Loan as well. *See* Compl. at ¶ 86. Plaintiffs cannot plausibly state that BANA's promise, made in April of 2012, and expressly withdrawn two weeks later, caused them to go three years without modifying their Loan, without paying their mortgage, or otherwise remaining current on the Arrears-Only Loan. Any injury they have suffered is purely of their own doing. Accordingly, even if Plaintiffs could assert a promissory estoppel claim, Count IV is not plausibly plead.

### Conclusion

For these reasons, the claims asserted in Plaintiffs' Complaint, including claims for specific performance, declaratory judgment, breach of contract and promissory estoppel, each lack any factual or legal basis sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Even taking their factual allegations as true, the Complaint fails to establish any claim for which this Court may grant relief as a matter of law. As such, the instant Motion to Dismiss should be granted and the Complaint should be dismissed with prejudice.

Respectfully Submitted,
**RUSHMORE LOAN MANAGEMENT
SERVICES, LLC, and
US BANK NA, AS LEGAL TITLE FOR
TRUMAN 2013 SC3 TITLE TRUST**
*By Counsel*

Dated: August 21, 2015   By: */s/ Jeffrey Nadel*_____
          Jeffrey Nadel, Esq., Md. Fed. Bar No. 01526
          LAW OFFICES OF JEFFREY NADEL
          4041 Powder Mill Road, Suite 415
          Calverton, Maryland 20705
          jeff@lojnlaw.com
          240-473-5000
          240-473-0507 Fax
          *Co-Counsel for Defendants Rushmore and US Bank*

         By: */s/ Scott Nadel*_____
          Scott Nadel, Esq., Md. Fed. Bar No. 16027
          LAW OFFICES OF JEFFREY NADEL
          4041 Powder Mill Road, Suite 415
          Calverton, Maryland 20705
          ScottNadel@lojnlaw.com
          240-473-5000
          240-473-0507 Fax
          *Co-Counsel for Defendants Rushmore and US Bank*

         By: */s/ Bizhan Beiramee*_____
          Bizhan Beiramee, Esq., Md. Fed. Bar No. 29220
          BEIRAMEE LAW GROUP, P.C.
          7508 Wisconsin Avenue, Second Floor
          Bethesda, Maryland 20814
          bbeiramee@beiramee.com
          (301) 547-3805
          (703) 483-9599 Fax
          *Co-Counsel for Defendants Rushmore and US Bank*

**Certificate of Service**

I hereby certify that on this 21st day of August, 2015, the foregoing was filed with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to all counsel of record.

*/s/ Bizhan Beiramee*
Bizhan Beiramee, Esq., Md. Fed. Bar No. 29220
BEIRAMEE LAW GROUP, P.C.
7508 Wisconsin Avenue, Second Floor
Bethesda, Maryland 20814
bbeiramee@beiramee.com
(301) 547-3805
(703) 483-9599 Fax
*Co-Counsel for Defendants Rushmore and US Bank*