**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| **JAMES A. ORAZI, *et al.*,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**BAC HOME LOANS SERVICING, LP, *et al.*,**<br>**Defendants.** | Case No. 1:15-CV-01520-JFM |

**REPLY IN SUPPORT OF**
**DEFENDANTS RUSHMORE'S AND US BANK'S**
**MOTION TO DISMISS**

Defendants Rushmore Loan Management Services LLC ("Rushmore") and US Bank NA, as Legal Title Trustee for Truman 2013 SC3 Title Trust ("US Bank") (collectively, "Defendants"), by counsel, hereby submit the following reply in support of their motion to dismiss the Complaint filed by Plaintiffs James A. Orazi and Kimberly Rider-Orazi (collectively, "Plaintiffs"):

**INTRODUCTION**

Plaintiffs' Opposition merely reinforces that they have no claims against their current lender, US Bank, and loan servicer, Rushmore, who are the assignees of Plaintiffs' $812,000.00 mortgage loan (the "Loan"), and servicing rights, respectively, in 2014. Significantly, the crux of the Complaint arises from Plaintiffs' contention that, in 2012, their original lender, Bank of America, N.A. ("BANA"), entered into a loan modification agreement ("LMA") with Plaintiffs, *see* Compl. [ECF 2] at ¶¶ 64, 70, 73, but thereafter "refused to recognize and honor the executed LMA," *id.* at ¶ 45, or in Plaintiffs' words, "unilaterally rescinded" such agreement. *Id.* at ¶ 76; *see also id.* at Ex. J [ECF 2-1 at pp. 36-39]; Mt. to Dismiss, **Ex. 1** [ECF 18-2](the September 25, 2012 Letter). Nevertheless, Plaintiffs take the untenable position that the unconsummated or rescinded

loan modification agreement is enforceable against Defendants. As explained in Defendants' Motion to Dismiss, it is not.

Although the Opposition focuses on whether the LMA constituted an enforceable contract, it does not dispute that—even if the LMA constituted a viable, binding contract—it was later rescinded by BANA. This concession is fatal to Plaintiffs' claims, warranting the dismissal of Plaintiffs' claims for specific performance (Count I), declaratory judgment (Count II), or breach of Contract (III) against Defendants.

Likewise, Plaintiffs do not dispute that they became delinquent on their loan payments immediately after they obtained a curative loan from the Maryland Department of Housing and Community Development ("DHCD"), designed specifically to reinstate the Loan by paying off their arrears (the "DHCD Loan"). Indeed, it is undisputed that the DHCD Loan was cancelled by DHCD. Thus, depending on the timing of such delinquency, Plaintiffs either fail to satisfy a condition precedent to the LMA (i.e., that the Loan be brought current); or subsequently breached the terms of the LMA (by default on their loan payments). In either event, Plaintiffs' claims arising under the LMA should be dismissed with prejudice as against Defendants.

Additionally, Plaintiffs' Opposition fails to sufficiently dispute that the LMA lacked consideration and failed to satisfy the statute of frauds. Nor do Plaintiffs show that they are entitled to the remedies of specific performance or contractual damages against Defendants, which were subsequently assigned interests in the original, unmodified Loan.

Finally, the Opposition does not address—and therefore concedes—that Plaintiffs' promissory estoppel claim (Count IV) is untenable, and otherwise insufficiently plead.

Accordingly, for the reasons stated below, as well as those discussed in the previously-filed Motion to Dismiss, Defendants respectfully request that the Complaint be dismissed as against them with prejudice.

## ARGUMENT

### I. Even if the LMA began as an enforceable contract, Plaintiffs acknowledge that it was later rescinded. Therefore, the LMA cannot be enforced against Defendants, which were assignees of certain interests in the original, unmodified Loan.

The Opposition fails to reconcile Plaintiffs' claims that the LMA was rescinded with their attempts to enforce the LMA against Defendants. Specifically, the Complaint arises under the premise that BANA "refused to recognize and honor the executed LMA," Compl. [ECF 2] at ¶ 45, and in fact, "unilaterally rescinded" the LMA. *Id.* at ¶ 76. In the Motion to Dismiss, Defendants discuss the effect of rescission on a contract: that rescission renders a contract void *ab initio*, and restores the parties to the *status quo*.[1] Given that the LMA was a modification of the original Loan agreement,[2] BANA's alleged rescission would have restored the terms of the original, unmodified Loan.[3]

Plaintiffs' Opposition does not respond to or otherwise address this argument. Therefore, Plaintiffs concede this point. *See McKeel v. United States*, 178 F. Supp. 2d 493, 504 (D. Md. 2001) ("Plaintiff appears to concede this point, as he has failed to respond to the government's argument on this point."); *Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 440 (D.

---

[1] *See* Mt. to Dismiss, Memo. [ECF 18-2] at pp. 17-19 (citing *Dialist Co. v. Pulford*, 42 Md. App. 173, 177 n. 3, 399 A.2d 1374 (1979); *Barufaldi v. Ocean City*, 196 Md. App. 1, 22 n. 7 (2010)).

[2] *See* Compl. at ¶ 41; *id.* at Ex. F [ECF 2-1 at pp. 15-20] (April 6, 2012 Letter from BANA); Mt. to Dismiss, at **Ex. 2** [ECF 18-4] (April 6, 2012 Letter from BANA).

[3] *See* Mt. to Dismiss, Memo. [ECF 18-2] at pp. 17-19 (citing *Kane Realty Co. v. National Children's Stores, Inc.*, 169 Misc. 699, 702 (N.Y. Mun. Ct. 1938)).

Md. 2001) ("Plaintiffs appear to concede this point, as they have failed to respond to this argument."); *cf. Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [a moving party's] argument" in support of a dispositive motion, "the [non-moving party] abandons [that] claim."); *Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (non-moving party's failure to address in opposition brief an argument raised in opening brief constitutes abandonment of claim).

Accordingly, Plaintiffs' Count I (specific performance), Count II (declaratory judgment), and Count III (breach of contract)—which arise under the terms of the LMA, or otherwise rely on the LMA being enforceable—are inapplicable as against Defendants, assignees of the original, unmodified Loan, and should be dismissed with prejudice as against Defendants.

**II. The Opposition does not refute that Plaintiffs became delinquent on their loan payments shortly after obtaining the DHCD Loan. Therefore, Plaintiffs cannot enforce the LMA as a matter of law.**

By focusing on whether the LMA constituted a binding contract, the Opposition fails to refute a significant defect in the Complaint raised in Defendants' Motion to Dismiss. Namely, Plaintiffs' own allegations support that, shortly after bringing the subject Loan current with the DHCD Loan, they again fell behind on their loan payments. *See* Mt. to Dismiss, Memo. [ECF 18-2] at pp. 11-13. Indeed, this defect undermines Plaintiffs' attempt to enforce the terms of the LMA against Defendants (Counts I, II, and III): either (i) Plaintiffs failed to satisfy a condition precedent to the LMA, resulting in no contract being consummated; or (ii) assuming *arguendo* that the LMA were consummated, Plaintiffs subsequently breached the terms of the LMA, precluding their enforcement of such contract.

As observed in the Motion to Dismiss, Plaintiffs' own allegations reveal that: (i) although the DHCD Loan brought the Loan current through October of 2011, they fell behind on their

mortgage payments immediately thereafter, prior to the consummation of the LMA,[4] and that (ii) DHCD withdrew funding of the DHCD Loan at some point in May of 2012 (the same month in which the LMA was to take effect).[5] Due to the timing of Plaintiffs' delinquency, Defendants asserted that Plaintiffs failed to satisfy a condition precedent to consummating the LMA. *See* Mt. to Dismiss, Memo. [ECF 18-2] at pp. 12-13.

In response, Plaintiffs do not refute their delinquency. Rather, the Opposition merely contends that the DHCD Loan brought the Loan current through October of 2011.[6] Indeed, Plaintiffs' attorney admits as much in the January 30, 2013 Letter.[7] But, failing to account for payments for the next seven (7) months, Plaintiffs implausibly aver that, by making a single monthly payment of $5,667.51 in May of 2012, the entire Loan was brought current and all conditions precedent were satisfied, also ignoring the withdrawal of the DHCD Loan itself. *See* Opp. [ECF 22] at p. 4.

Notably, the Opposition does not dispute that the DHCD withdrew funding of the DHCD

---

4 *See, e.g.,* Compl. at Ex. J (January 30, 2013 Letter) [ECF 2-1 at pp. 27-30] (Plaintiffs' own attorney claiming that, even if the Arrears-Only Loan brought them current through October of 2011, they were nonetheless "delinquent" for their November, December, and January payments).

5 *See* Compl. at ¶ 47 ("Plaintiffs were informed that monies disbursed by [DHCD] to [BANA] had been sent back to [DHCD]. The return of said funds resulted in a delinquency status."); *id.* at Ex. J [ECF 2-1 at p. 38]; *see also* Mt. to Dismiss, **Ex. 1** [ECF 18-3] (September 25, 2012 Letter from BANA) at p. 3 ("[I]n May 2012, the [DHCD] requested the funds be returned, and as such, your account was placed back into delinquency status, making you ineligible for the pre-emptive modification.").

6 *See* Opp. [ECF 22] at p. 4 ("[F]unds were transferred to BOA at settlement of the loan with EMA on September 29, 2011 along with a check from the Plaintiff's in the amount of $9,031.96.").

7 *See* Compl. at Ex. J (January 30, 2013 Letter) [ECF 2-1 at p. 28] ("[T]he disbursement [of proceeds from the Arrears-Only Loan] brought [Mr. Pineda's] account current through October . . .").

Loan, and BANA complied with the DHCD's demand for the return of such funds.[8] Nor do Plaintiffs contend that they obtained replacement funding for the $49,597.00, as such amounts were necessary to bring the Loan current.

As a result, Plaintiffs' Opposition fails to salvage the Complaint on two levels:

**A. The Opposition does not refute that the Loan was not current at the time the LMA was supposed to become effective; and that therefore, a condition precedent to consummating the LMA was not satisfied.**

First, Plaintiffs' allegations do not plausibly show that they satisfied a condition precedent to consummating the LMA—i.e., that the Loan be brought current. In paragraphs 29 and 30 of the Complaint, Plaintiffs explain that the availability of the preemptive loan modification required that they bring the loan current, which is why they claim they obtained the DCHD Loan. Not only was the DCHD Loan withdrawn, but they do not allege that they kept the Loan current through May of 2012. Without satisfaction of a condition precedent "whether express or implied, there is no duty of performance and there can be no breach by non-performance until the condition precedent is either performed or excused." *All State Home Mortg., Inc. v. Daniel*, 187 Md. App. 166, 182 (2009).

Rather than address Defendants' arguments, Plaintiffs simply ignore their failure to make regular monthly payments between October of 2011 and May of 2012, as well as the withdrawal of the DHCD Loan. However, as a result of their nonpayment of these amounts, Plaintiffs were not current on their Loan prior to entering into the LMA. With the withdrawal of the DHCD Loan,

---

8 *See* Opp. ("In September, 2012 the Plaintiffs were finally informed the monies disbursed by EMA to BOA had been sent back to EMA which resulted in the mortgage being placed in a delinquency status."); *see also* Compl., at Ex. J [ECF 2-1 at p. 38] (September 25, 2012 Letter from BANA) ("[I]n May 2012, the [DHCD] requested the funds be returned, and as such, your account was placed back into delinquency status, making you ineligible for the pre-emptive modification."); Mt. to Dismiss, **Ex. 1** [ECF 18-3] (September 25, 2012 Letter from BANA) at p. 3.

BANA was under no duty to perform under the putative but unconsummated LMA.

**B. Even if the LMA were consummated, Plaintiffs do not refute that they breached its terms by falling behind on their loan payments. As the breaching party under such contract, Plaintiffs are precluded from enforcing its terms.**

Second, assuming *arguendo* that the LMA constituted a binding contract, Plaintiffs' own allegations support that they breached its terms, precluding them from enforcement of such contract. In the Opposition, Plaintiffs complain that BANA "unilaterally cancelled the LMA, without notice and without cause or through judicial process, thereby breaching its covenant to honor the terms within the LMA despite countless requests by the Plaintiffs that BOA honor the LMA and despite the fact that Plaintiffs have placed the monthly amount of the mortgage in a bank account since BOA refused to honor the LMA." Opp. [ECF 22] at p. 5.[9] However, Plaintiffs' undisputed delinquency would not only grant BANA the right to rescind the LMA as a matter of law, but would also invalidate Plaintiffs' attempt to enforce the terms of the LMA.

Under Maryland law, "where . . . there has been a material breach of a contract by one party, the other party has a right to rescind it." *Maslow v. Vanguri*, 168 Md. App. 298, 323, 896 A.2d 408, 423 (2006) (quoting *Washington Homes, Inc. v. Interstate Land Development Co., Inc.*, 281 Md. 712, 728, 382 A.2d 555 (1978)). As a corollary to this well-established rule, "[a] breaching party usually has no right to enforce a contract." *Bezmenova v. Ocwen Fin. Corp.*, 2013 U.S. Dist. Lexis 102514, at *10 (D. Md. 2013) (citing Restatement (Second) of Contracts § 237

---

[9] In the Opposition, Plaintiffs appear to take issue with the lack of notice of rescission. *See* Opp. [ECF 22] at p. 5; *see also Lazorcak v. Feuerstein*, 273 Md. 69, 75-76, 327 A.2d 477, 481 1974) ("[A]s a general rule, the party seeking rescission must indicate to the other party at least the intent to restore the parties to the relative positions which they would have occupied if no such contract had ever been made, and this as soon as the disenchanted party learns of the facts."). However, Plaintiffs attach to their Complaint at least one notice by BANA, in which they were informed that the LMA was "cancelled in June 2012" due to Plaintiffs' delinquency. *See* Compl. at Ex. J [ECF 2-1 at pp. 38] (the September 25, 2012 Letter); Mt. to Dismiss, **Ex. 1** [ECF 18-3] (the September 25, 2012 Letter) at p. 3.

(1981) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.").

Here, as discussed above, Plaintiffs own allegations support that they were significantly behind on their mortgage loan payments. Although Plaintiffs reiterate that the LMA was nonetheless consummated, this argument does not salvage their claims. Notably, the terms and conditions under the original Loan agreement were still in effect under the LMA.[10] Therefore, under the express terms of the LMA, failure to stay current on the Loan would constitute a material breach. Indeed, even if Plaintiffs were willing to pay their monthly payment into Court (which they claim to secure in a separate bank account), they have never explained how the funds from the rescinded DHCD Loan would be replaced; nor have they otherwise accounted for the repayment of those funds.

Accordingly, Plaintiffs have failed to plausibly state a claim to enforce the terms of the LMA, particularly against Defendants, as assignees of the original, unmodified Loan; and Count I (specific performance), Count II (declaratory judgment), and Count III (breach of contract) should be dismissed with prejudice.

## III. As the LMA lacked consideration and failed to satisfy the statute of frauds, it cannot constitute an enforceable agreement.

Plaintiffs have yet to plausibly identify sufficient consideration for the LMA to constitute a binding contract. In the Opposition, Plaintiffs refer to the funding by the DHCD through the

---

[10] *See also* Compl., Ex. F (April 6, 2012 Letter from BANA) [ECF 2-1 at pp. 15-20] at pp. 18 ("Nothing in this Modification will invalidate, impair or release any term or condition in the Note or the Security Instrument which will remain in full force and effect."), 19 ("Except where otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement."); Mt. to Dismiss, **Ex. 2** [ECF 18-3] (April 6, 2012 Letter from BANA) [ECF 18-4] at pp. 5, 6.

DHCD Loan as "consideration." Opp. at p. 4. However, as a matter of law, this is insufficient to constitute consideration. Notably, Plaintiffs recognize that this amount was necessary to bring the original Loan current. *See* Compl. [ECF 2] at ¶¶ 29-31, 41; *id.* at Ex. D (Emails with BANA) [ECF 2-1 at p. 8]. Thus, as this amount was already owed, payment of such funds will not support the existence of a new agreement. *See Allen v. CitiMortgage, Inc.*, 2011 U.S. Dist. Lexis 86077, at *15 (D. Md. 2011) (citing *Wickman v. Kane*, 136 Md. App. 554, 766 A.2d 241, 246 (2001)); *Reece v. Reece*, 239 Md. 649, 659 (1965) ("The general rule is that past consideration is insufficient to support a present promise.").

Additionally, Plaintiffs' Opposition does not directly contest Defendants' argument that the LMA cannot constitute an enforceable contract because it fails to satisfy the statute of frauds. *See* Mt. to Dismiss, Memo. [ECD 18-1] at p. 13-15. Rather, Plaintiffs now contend that it is "ambiguous" whether or not the BANA's signature was required as a condition precedent to the consummation of the LMA. *See* Opp. [ECF 22] at p. 5 ("It is Plaintiffs' position that the LMA is ambiguous as to whether or not the signature from BOA was required in order to execute the LMA and the intent of the parties in forming the LMA can only be made by a factual determination."). However, as Plaintiffs do not dispute that BANA failed to sign the LMA, the statute of frauds precludes the enforceability of the LMA as a matter of law.[11]

Further, Plaintiffs cannot claim to have partially performed under the LMA.[12] As

[11] In the Opposition, Plaintiffs discuss this Court's decision in *Azimirad v. HSBC Mortg. Corp.*, 2011 U.S. Dist. Lexis 40080 (D. Md. 2011), which rejected the notion that a lender's or loan servicer's signature on a loan modification was a condition precedent to an agreement. *See Azimirad*, 2011 U.S. Dist. Lexis 40080 at * 11. However, this Court did not discuss the statute of frauds defense, which applies to an action brought "on any contract for the sale or disposition of land or of any interest in or concerning land." Md. Code, Real Property § 5-104.

[12] *See* Opp. [ECF 22] at p. 5 ("It is Plaintiffs' further positions that the partial performance conducted by the Plaintiffs takes this situation outside the Statute of Frauds.").

explained above, the amounts allegedly paid by Plaintiffs were necessary to bring their existing Loan obligation current. Thus, Plaintiffs were not performing under the LMA, but satisfying a condition precedent. Nor was that condition fulfilled, as the DHCD Loan was withdrawn.

Accordingly, the Opposition fails to resuscitate Plaintiffs' attempts to enforce the LMA. As this putative agreement was never consummated, Count I (specific performance), Count II (declaratory judgment), and Count III (breach of contract) should be dismissed with prejudice.

**IV. The Opposition fails to refute that Defendants have not assumed liability for the actions of a prior loan servicer.**

In response to Defendants' argument that they did not impliedly assume liability for any action taken by BANA, *see* Mt. to Dismiss, Memo. [ECF 18-2] at p. 20-22, Plaintiffs attempt to show that Defendants expressly assumed liability for BANA's conduct in connection with the LMA. Specifically, in the Opposition, Plaintiffs contend that language in a recorded assignment of a deed of trust (the "Assignment") indicates that Defendants expressly assumed liability. In relevant part, the language in the Assignment provided that BANA assigns to Defendant US Bank "all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust." Opp., Ex. 1 (Assignment) [ECF 22-1].

As an initial issue, the Assignment referenced by Plaintiffs was executed well after BANA allegedly rescinded the LMA. To the extent the Assignment transferred any interest in the underlying debt, it transferred an interest in the original, unmodified Loan. It could not have transferred the LMA because such agreement was, at worst, unconsummated, or at best, rescinded.

Similarly, the Assignment is insufficient to show that Defendants **expressly** assumed liability for BANA's obligations under the LMA. *See Homa v. Friendly Mobile Manor*, 93 Md. App. 337, 353, 612 A.2d 322, 329 (1992) ("[T]here is no implied assumption by an assignee of

his assignor's obligations under the original contract merely by virtue of the assignment.") (citing *P/T Ltd. v. Friendly Mobile Manor, Inc.*, 79 Md. App. 227, 234, 556 A.2d 694 (1989)). Indeed, that agreement is not referenced anywhere in the Assignment. Rather, the instrument references obligations owed under the original promissory note and deed of trust. *See* Opp., Ex. 1 (Assignment) [ECF 22-1].

In the Opposition, Plaintiffs claim that *Homa* is inapplicable, and instead rely upon *P/T Ltd. v. Friendly Mobile Manor, Inc.* 79 Md. App. 227, 556 A.2d 694 (1989), to surmise that Defendants assumed their assignor's duties under the rescinded LMA. To that end, they note that, in *P/T Ltd.*, the Court relied on testimony to establish that it was "perfectly clear that the assignee did not intend to assume any liability for the underlying debt." *Id.*, 79 Md. App. at 236, 556 A.2d at 698; *see* Opp. [ECF 22] at p. 6. However, that case involved the financing of mobile homes, for which the Court considered the applicability of the Commercial Code for the sale of goods or services, in which liability is assumed, unless expressly negated. *See id.*, 79 Md. App. at 234, 556 A.2d at 697 ("The rule is somewhat different with respect to assignments of contracts for the sale of goods. Friendly contends that the present sales contract falls under the Uniform Commercial Code, Md. Comm. Law Code Ann. (1975), § 2-210(4), which provides that an assignment of rights under a contract 'is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise to perform those duties' absent the assignee's express negation of those duties.").

However, the *P/T Ltd.* Court recognized that, "[i]n the context of real property transactions, the Court of Appeals has held that an assignee must expressly assume any correlative duties with the rights assigned in order to be liable for such duties under the contract." *Id.*, 79 Md. App. at 234, 556 A.2d at 697. Thus, Plaintiffs cannot rely solely upon the assignment of a deed of trust,

but are instead required to plead plausible facts that Defendants expressly assumed liability for the obligations under the rescinded LMA. No such facts are plead.[13]

In sum, the Opposition's reference to a certain Assignment is insufficient as a matter of law to show that Defendants expressly assumed liability for actions taken by BANA in connection with the unconsummated or rescinded LMA. Nor can Defendants impliedly assume liability as a matter of law. Accordingly, Count III (breach of contract) should be dismissed with prejudice as against Defendants.

### V. Plaintiffs conceded that the remedy of specific performance is unavailable against Defendants, which were subsequently assigned certain rights in the original, unmodified Loan.

Additionally, Plaintiffs do not dispute that the remedy of specific performance is unavailable to them as against Defendants. Nor could they successful dispute this issue. Indeed, the Complaint does not even demand that Defendants perform any specific obligation under the LMA. Rather, admitting that they have not been current on the Loan for at least three (3) years, Plaintiffs appear to seek a judicial reinstatement of their Loan. However, this is insufficient to show entitlement to the remedy of specific performance. *See Cutler v. Sugarman Org., Ltd.*, 88 Md. App. 567, 586, 596 A.2d 105, 114 (1991) ("[O]ne who seeks specific performance must be able to show that 'he is ready and desirous to comply with the contract on his part, and has the ability to perform.'"). As Defendants are assignees of certain rights under the Loan, and given the

---

[13] Moreover, an assignment of a deed of trust is insufficient as a matter of law to show that Defendants expressly assumed liability for actions taken by BANA in connection with the unconsummated or rescinded LMA. Notably, assignments of deeds of trust do not transfer the underlying debt obligations. As explained by the Court of Appeals in *LeBrun*, "a deed of trust need not and properly speaking cannot be assigned like a mortgage, . . . but the note can be transferred freely, and, when transferred, carries with it the security, if any, of the deed of trust. . . . The note and the mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, **while an assignment of the latter [i.e. the deed of trust] alone is a nullity**." *Lebrun*, 197 Md. at 474-75, 79 A.2d at 548 (emphasis added).

significant time that has elapsed since the events of the Complaint, Plaintiffs claims—at best, and notwithstanding their significant deficiencies—can only legally be directed at BANA for damages. *See Hupp v. George R. Rembold Bldg. Co.*, 279 Md. 597, 601, 369 A.2d 1048, 1051 (1977) ("It has long been established that if the remedy of specific performance is possible when the vendee brings suit, but while the action is pending, a vendor disables himself from performing his contract, damages may be awarded in lieu of specific performance, . . . *See Kappelman v. Bowie*, 201 Md. 86, 90, 93 A. 2d 266, 268 (1952) ('equity may refuse . . . to . . . enforce a hard bargain').").

Accordingly, as the remedy of specific performance sought by Plaintiffs under Count I is unavailable against assignees of the original, unmodified Loan as a matter of law, Defendants respectfully submit that Count I should be dismissed with prejudice as against them.

## VI. Plaintiffs concede that Count IV (promissory estoppel) is untenable as a matter of law; and do not refute that such claim is insufficiently plead as against Defendants.

In the Motion to Dismiss, Defendants assert that Count IV (promissory estoppel) is untenable as a matter of law because Plaintiffs' alleged relationship with Defendants arises from and depends entirely on the promissory note evidencing the Loan and the deed of trust securing Plaintiffs' indebtedness. *See* Mt. to Dismiss, Memo. [ECF 18-2] at p. 22; *Ver Brycke v. Ver Brycke*, 379 Md. 669, 693 n.9, 843 A.2d 758, 772 n.9 (2004) ("[p]romissory estoppel claims, which are quasi-contract claims, would have been untenable had they argued that a contract had existed between [the parties]."). As Plaintiffs fail to address this argument, it is conceded; and for that reason alone, Count IV should be dismissed with prejudice.

Additionally, Defendants argue that, even if tenable, Count IV is insufficiently plead as against Defendants. Again, Plaintiffs fail to address this argument. As an initial matter, Plaintiffs fail to identify any promise made by Defendants themselves, as opposed to BANA. Further, although they claim that the DHCD Loan was obtained "at the encouragement of [BANA]," Opp.

[ECF 22] at p. 4, Plaintiffs overstate their own allegations. To the contrary, the only "encouragement" provided by BANA was replying "[t]o my knowledge, yes," to Plaintiff Mr. Orazi inquiring if BANA would offer a loan modification if the DHCD Loan brought them current on the subject Loan. *See* Compl. at Ex. D [ECF 2-1 at p. 8-10]; Opp. [ECF 22] at p. 2. Such a statement would be insufficient to support a promissory estoppel claim even if such a claim were available to Plaintiffs as against Defendants. Moreover, the DHCD Loan was withdrawn.

## CONCLUSION

For these reasons, the claims asserted in Plaintiffs' Complaint, including claims for specific performance, declaratory judgment, breach of contract and promissory estoppel, each lack any factual or legal basis sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Even taking their factual allegations as true, the Complaint fails to establish any claim for which this Court may grant relief as a matter of law. As such, the instant Motion to Dismiss should be granted and the Complaint should be dismissed with prejudice.

Respectfully Submitted,
**RUSHMORE LOAN MANAGEMENT SERVICES, LLC, and**
**U.S. BANK NA, AS LEGAL TITLE FOR TRUMAN 2013 SC3 TITLE TRUST**
*By Counsel*

Dated: October 26, 2015

By: */s/ Jeffrey Nadel*
Jeffrey Nadel, Esq., Md. Fed. Bar No. 01526
LAW OFFICES OF JEFFREY NADEL
4041 Powder Mill Road, Suite 415
Calverton, Maryland 20705
jeff@lojnlaw.com
240-473-5000
240-473-0507 Fax
*Co-Counsel for Defendants Rushmore and US Bank*

By: */s/ Scott Nadel*
Scott Nadel, Esq., Md. Fed. Bar No. 16027
LAW OFFICES OF JEFFREY NADEL
4041 Powder Mill Road, Suite 415
Calverton, Maryland 20705
ScottNadel@lojnlaw.com
240-473-5000
240-473-0507 Fax
*Co-Counsel for Defendants Rushmore and US Bank*

By: */s/ Bizhan Beiramee*
Bizhan Beiramee, Esq., Md. Fed. Bar No. 29220
BEIRAMEE LAW GROUP, P.C.
7508 Wisconsin Avenue, Second Floor
Bethesda, Maryland 20814
bbeiramee@beiramee.com
(301) 547-3805
(703) 483-9599 Fax
*Co-Counsel for Defendants Rushmore and US Bank*

**Certificate of Service**

I hereby certify that on this 26th day of August, 2015, the foregoing was filed with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to all counsel of record.

*/s/ Bizhan Beiramee*
Bizhan Beiramee, Esq., Md. Fed. Bar No. 29220
BEIRAMEE LAW GROUP, P.C.
7508 Wisconsin Avenue, Second Floor
Bethesda, Maryland 20814
bbeiramee@beiramee.com
(301) 547-3805
(703) 483-9599 Fax
*Co-Counsel for Defendants Rushmore and US Bank*