IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES A. ORAZI and KIMBERLY
RIDER-ORAZI

v.                                              Civil No. RDB-15-1520

BAC HOME LOANS SERVICING, LP,
RUSHMORE LOAN MANAGEMENT
SERVICES, LLC, and US BANK NA as
LEGAL TITLE TRUSTEE FOR TRUMAN
2013 SC3 TITLE TRUST

\*\*\*\*\*\*\*\*

## MEMORANDUM

Plaintiffs James A. Orazi ("Orazi") and Kimberly Rider-Orazi ("Rider-Orazi") bring this lawsuit against defendants Bank of America, N.A. ("BANA"),[1] Rushmore Loan Management Services, LLC ("Rushmore"), and US Bank NA as Legal Title Trustee for Truman 2013 SC3 Title Trust ("US Bank") for alleged breach of contract in connection with a loan modification. Now pending is defendants' joint motion for summary judgment (ECF No. 101). The motion is fully briefed, and no oral argument is necessary. See Local Rule 105.6. For the reasons below, defendants' motion is GRANTED and Judgment is ENTERED in favor of all three Defendants against the Plaintiffs.

## BACKGROUND

This dispute concerns a mortgage loan obtained by plaintiff Orazi from defendant BANA to finance the purchase of real property located at 2503 Garsden Court, Phoenix, Maryland 21131 (the "Property"). ECF No. 101-3. Spouses Orazi and Rider-Orazi purchased the Property on June 29, 2007 for $1,160,000. ECF No. 101-2. The original principle of the loan from

---

[1] BAC Home Loans Servicing, LP merged with Bank of America, N.A. on July 7, 2011.

BANA was $812,000 (the "BANA Loan"), secured by an Adjustable Rate Note (the "Note") executed by Orazi and the Deed of Trust to the Property (the "Deed of Trust") executed by Orazi and, as a co-signer, Rider-Orazi. ECF Nos. 101-3, 101-4. In 2010, plaintiffs began having trouble making their loan payments, so they sought a loan modification from BANA. This attempt was ultimately unsuccessful and is now the subject of this suit. Defendants U.S. Bank and Rushmore are the current owner and servicer, respectively, of the Loan. ECF Nos. 101-18; 101-21.

The Deed of Trust requires Orazi to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges under the Note." ECF No. 101-4, ¶ 1. As a co-signer, Rider-Orazi is not "personally obligated to pay the sums" secured by the Deed of Trust. *Id.* at ¶ 13. Under the terms of the Deed of Trust, Orazi's payments pursuant to the Note would "be applied to each Periodic Payment in the order which it became due," meaning that any payment would be applied to the earliest month in arrears. *Id.* at 101-4, ¶ 2.

From June 2007 to December 2010, Orazi made full monthly mortgage payments to BANA. ECF No 116-2, Orazi Tr. 83:7-8. In December 2010, Orazi lost his job and fell behind on the payments, breaching the terms of the Note and Deed of Trust. *Id.*; ECF No. 101-5, Orazi Tr. 193:14-194:2. After falling behind on payments, Orazi and Rider-Orazi persistently pursued a loan modification from BANA. As part of these efforts, Orazi obtained a loan of $49,597 (the "State Loan") through the Emergency Loan Assistance Program of the Maryland Department of Housing and Community Development ("DHCD") to use to bring the BANA Loan current. ECF No. 116-3. The State Loan had 0% interest, and its balance would be forgiven after five years if Orazi maintained his residence and remained current on his BANA Loan. ECF No. 101-11, ¶¶

2

3-4; ECF No. 116-2, Orazi Tr. 89:4-19. DHCD paid the balance of the State Loan directly to BANA, satisfying all amounts due under the BANA Loan. ECF No. 101-10, p. 16.

After the State Loan was used to satisfy the arrearage of the BANA Loan, BANA continued to work with Orazi to determine if he was eligible for a loan modification. BANA informed Orazi multiple times throughout the process that Orazi was required to remain current on the BANA loan to be eligible for a loan modification. For example, on December 27, 2011, Sonia Velazquez ("Velazquez"), a Mortgage Servicing Specialist at BANA, emailed Orazi notifying him that he would need to bring the loan current to receive a loan modification. ECF No. 101-13, p. 7-8. On December 28, 2011, Velazquez emailed Orazi stating, "Please keep calling customer service…so they can appl[y] all of your payments to your mortgage, you have to show current to finish the modification process." *Id.* at p. 6.

On April 6, 2012, BANA sent Orazi a letter conditionally approving the BANA Loan for a loan modification (the "LMA"). ECF No. 101-15. The BANA Loan was current as of the date of this letter due to the payments from the State Loan. ECF No. 101-12, Deloney Tr. 30:1-5. The LMA was subject to two conditions: (1) the enclosed documents had to be signed, notarized, and returned to BANA by April 20, 2012, and (2) Orazi had to make his normal monthly payment for April 1, 2012 in the amount of $5,667.51. ECF No. 101-15, p. 2. The Orazis timely signed, notarized, and returned the required documents and submitted one mortgage payment in April 2012. ECF No. 101-12, Deloney Tr. 34:6-23.

When the Orazis made their April 2012 payment, however, the BANA Loan was no longer current, and the April 2012 payment was applied to the last installment that was due. ECF No. 101-12, Deloney Tr. 46:1-22. The BANA Loan was no longer current because DHCD realized it had overpaid the State Loan and requested a refund from BANA. *Id.* at 36:9-17.

3

BANA returned the requested funds, causing Orazi's account to fall into arrears for January, February, and March 2012. *Id.* Because the Deed of Trust, which remained in effect despite the LMA, requires BANA to apply any payment by Orazi "to each Periodic Payment in the order in which it became due," BANA applied the April payment made by the Orazis to January 2012, the earliest month that was in arrears. ECF No. 101-4, ¶ 2. Accordingly, the condition of the LMA requiring Orazi to make the April 2012 payment was never satisfied. ECF No. 101-12, Deloney Tr. 34:13-23.

On May 8, 2012, Velazquez informed Orazi that BANA would still honor the LMA if Orazi brought the BANA Loan current by making the February, March, and April 2012 mortgage payments. ECF No. 101-16, p. 3. Orazi was unable to make these payments. *Id.* at p. 2. Accordingly, the BANA Loan remained delinquent, and the LMA never became effective. On March 5, 2013, BANA offered Orazi another loan modification which would not require Orazi to bring the BANA loan current. ECF No. 101-17, p. 2-4. Orazi rejected this offer because the interest rate for the new modification would be higher than the interest rate under the LMA. ECF No. 116-2, Orazi Tr. 117:5-17.

In 2013, BANA sold the Loan to defendant U.S. Bank, and servicing of the loan was transferred to defendant Rushmore. ECF Nos. 101-18, 101-21. BANA notified Orazi of the sale and transfer on December 26, 2013. ECF No. 101-21. On August 5, 2014, the Orazis provided a copy of the LMA to Rushmore, and Rushmore informed the Orazis that it would submit the LMA to US Bank for approval. ECF No. 101-22. Rushmore also asked if the Orazis could make the past due LMA payments (from May 1, 2012 to October 1, 2014), but counsel for the Orazis told Rushmore he did not know whether the Orazis could make the payments. ECF No. 101-23.

Until the filing of this litigation, the Orazis made deposits into a segregated account in the amount called for by the LMA. ECF No. 116-2, Orazi Tr. 49:11-52:5. The Orazis, however, have never offered or attempted to make any past due LMA payments to Rushmore or US Bank. ECF No. 101-5, Orazi Tr. 62:7-18. In fact, Orazi has not made a mortgage payment since April 2012, the payment that was applied to the arrears due for January 2012. *Id.* at 192:6-8. Despite not having made payments in six years, no foreclosure has been filed, and the Orazis have remained in the Property. *Id.* at 249:5-7; ECF No. 101-24, Rider-Orazi Tr. 199:3-6.

The Orazis filed suit against defendants in the Circuit Court for Baltimore County on April 16, 2015, and on May 26, 2015, defendants removed the case to this Court based on diversity of citizenship. ECF No. 1 (citing 28 U.S.C. §§ 1332, 1441, and 1446). The Orazis allege four counts against defendants, all arising from defendants' alleged refusal to honor the LMA: (I) specific performance, (II) declaratory judgment, (III) breach of contract, and (IV) promissory estoppel. ECF No. 2. On November 9, 2015, this Court denied Rushmore's and U.S. Bank's motion to dismiss. ECF No. 25. This Court also denied the Orazis' motion for leave to file their first amended complaint on August 26, 2016. ECF No. 50. Defendants filed the pending joint motion for summary judgment on April 20, 2018. ECF No. 101.

## STANDARD

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). A genuine issue of material fact exists where, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking

summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When reviewing a motion for summary judgment, the court must take all facts and inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The non-movant "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160-61 (1970). A court should enter summary judgment when a party fails to make a showing sufficient to establish elements essential to a party's case and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322-23.

## ANALYSIS

The Orazis' claims against defendants are all premised on the assumption that defendants were obligated to honor the Loan Modification Agreement ("LMA"). Defendants, however, contend the LMA never became effective because Orazi failed to fulfill the condition precedent of making the April 2012 payment. For the following reasons, the Joint Motion of all three Defendants for Summary Judgment shall be GRANTED.

### I. Standing of Kimberly Rider-Orazi ("Rider-Orazi")

Article III of the Constitution restricts the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. "[The] case-or-controversy requirement is satisfied

only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008) (citation omitted). To establish constitutional standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. _, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Rider-Orazi lacks standing in this case. She is a non-borrower: she signed the Deed of Trust as a mere co-signer and did not execute the Note. ECF Nos. 101-3, 101-4. As a mere co-signer, Rider-Orazi was not "personally obligated to pay the sums" secured by the Deed of Trust. ECF No. 101-4, ¶ 13. Additionally, she "agree[d] that Lender and any other Borrower [Orazi] can agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent." ECF No. 101-4, ¶ 13. Accordingly, Rider-Orazi is not an obligor on the Note or the subsequent LMA.[2]

These facts are analogous to those of another case in which this Court concluded the non-borrowing co-signer lacked standing. *See Nyhart v. PNC Bank, N.A.*, No. PX-15-2241, 2016 WL 6996744 (D. Md. Nov. 30, 2016). In *Nyhart*, a husband and wife brought suit against their lender alleging breach of contract related to a foreclosure by the lender. *Id.* at *1-2. The wife signed the Deed of Trust, but did not sign the Note, which "ma[de] her a mere co-signer to the Deed of Trust pursuant to its terms." *Id.* at *3. Similarly to the Deed of Trust in this case, the *Nyhart* Deed of Trust specified that co-signers were "not personally obligated to pay the sums secured by [the Deed of Trust]." *Id.* (alteration in original). "Because [the wife] [was] not an actual borrower on the loan," this Court concluded that "she [could not] enforce the terms of the loan" and therefore lacked standing to bring a breach of contract claim against the lender. *Id.*

---

[2] Plaintiffs concede that Rider-Orazi is not obligated on the original loan or the LMA. ECF No. 116-1, p. 18.

7

Similarly here, Rider-Orazi, as a non-borrower on the loan, lacks standing to bring claims arising from the LMA.[3] Accordingly, summary judgment is granted in favor of defendants on Rider-Orazi's claims.

## II. Specific Performance (Count I), Declaratory Judgment (Count II), and Breach of Contract (Count III) Claims

As this Court sits in diversity jurisdiction,[4] it must apply the choice-of-law rules of the forum state, Maryland, to identify the applicable state substantive law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941). Under Maryland's choice-of-law rules, contract claims are generally governed by the law of the state where the contract was made, unless the contract identifies the law of another jurisdiction. *See, e.g., Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995). The parties here do not dispute that Maryland contract law governs Orazi's claims.

Maryland adheres to the objective law of contract interpretation under which, "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract." *Md. Cas. Co. v. Blackstone Int'l Ltd.*, 114 A.3d 676, 681 (Md. 2015) (quoting *Long v. State*, 807 A.2d 1, 8 (Md. 2002)). If the terms of a contract are clear and unambiguous, then the court construes the contract according to its plain meaning. *Id.*

---

[3] Rider-Orazi is also not a third-party beneficiary as plaintiffs argue in their Opposition brief. *See* ECF No. 116-1, p. 18. Rider-Orazi would only be a third-party beneficiary to the LMA, "if the [LMA] was intended for [her] benefit and it…clearly appear[s] that the parties intended to recognize [her] as the primary party in interest and as privy to the promise." *See 120 W. Fayette St., LLP v. Mayor of Balt.*, 43 A.3d 355, 368 (Md. 2012) (citation and internal quotation marks omitted). It is not sufficient that the LMA "merely operates to [Rider-Orazi's] benefit." *See id.* The crucial inquiry in determining whether Rider-Orazi is a third-party beneficiary to the LMA is "whether the pertinent provisions in the contract were inserted…to benefit [her]." *See Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 726 (D. Md. 2013) (citation and internal quotation marks omitted). Plaintiffs point to no provisions inserted in the LMA to benefit Rider-Orazi. Accordingly, she cannot enforce the LMA as a third-party beneficiary.

[4] The Plaintiffs are citizens and residents of Maryland. ECF No. 2 at ¶ 1. Bank of America. N.A. is a citizen of North Carolina. ECF No. 1 at ¶ 13. Rushmore Loan Management Services, LLC is a citizen of Delaware. *Id.* at ¶ 14. U.S. Bank is a citizen of Minnesota. *Id.* at ¶ 15.

Where the terms of a contract impose conditions precedent, those conditions must be fulfilled before the contract becomes enforceable. Under Maryland law, a condition precedent is defined as "a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises." *Chirichella v. Erwin*, 310 A.2d 555, 557 (Md. 1973) (quoting 17 Am. Jur. 2d, Contracts, § 320). Whether a contract contains a condition precedent is a question of construction and is "dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation." *Id.* (citations omitted).

Unless the conditions precedent to a contract are excused, they must be met before the other party has a duty to perform. *Chesapeake Bank of Md. v. Monro Muffler/Brake, Inc.*, 891 A.2d 384, 391-92 (Md. App. 2006). Therefore, conditions precedent must be fulfilled before specific performance can be granted. *Cattail Assocs., Inc. v. Sass*, 907 A.2d 828, 843 (Md. App. 2006) (internal quotation marks and citation omitted) ("The performance of all conditions precedent is generally required before specific performance will be granted."); *see also Connolley v. Harrison*, 327 A.2d 787, 792 (Md. App. 1974) (citations omitted). Similarly, the conditions must occur before a party can obtain a declaratory judgment or recover for breach of contract. *All State Home Mortg., Inc. v. Daniel*, 977 A.2d 438, 447 (Md. App. 2009) (citations and internal quotation marks omitted) ("Where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by non-performance until the condition precedent is either performed or excused."); *Chesapeake Bank of Md.*, 891 A.2d at 391-92, 402.

The LMA unambiguously imposes two conditions "in order for the modification to be valid:" (1) "the enclosed documents must be signed, notarized, and returned to [BANA] by

9

[April 20, 2012]", and (2) "[Orazi] must make [his] normal monthly payment for 4/01/2012 in the amount of $5,667.51." ECF No. 101-15, p. 2-3. The first condition was fulfilled. ECF No. 101-12, Deloney Tr. 34:6-23. The second condition, however, was never performed because the payment Orazi made in April 2012 was applied to January 2012, the earliest month in arrears. ECF No. 101-4, ¶ 2. Therefore, Orazi did not make a payment satisfying his normal monthly payment for April 2012. Because this condition precedent was not satisfied and there is no evidence of excusal or waiver, defendants had no duties to perform under the LMA. *See Daniel*, 977 A.2d at 447 (citations and internal quotation marks omitted). Accordingly, Orazi cannot recover on his claims for specific performance, declaratory judgment, or breach of contract.

### III. Promissory Estoppel Claim (Count IV)

To recover on a promissory estoppel claim under Maryland law, a plaintiff must show four elements:

> (1) a clear and definite promise;
> (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;
> (3) which does induce actual and reasonable action or forbearance by the promisee; and
> (4) causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996) (citing Restatement (Second) of Contracts § 901(1) (1979)).

Even assuming Orazi has established the first three elements of his promissory estoppel claim, he fails to show a detriment to establish the fourth element. Orazi has not made a mortgage payment since April 2012. ECF No. 101-5, Orazi Tr. 192:6-8. Although Orazi has not made a payment in six years, no foreclosure action has been filed, and the Orazis remain in the Property. ECF No. 101-5, Orazi Tr. 249:5-7; ECF No. 101-24, Rider-Orazi Tr. 199:3-6.

In a case involving similar facts, this Court found plaintiffs incurred no economic damages and failed to establish any recoverable detriment:

> What is undisputed is that Plaintiffs have not made a single loan payment since September 2007, i.e. for some six years, beginning well prior to their initial [loan modification] application. In other words, Plaintiffs have not incurred any economic damages as a result of the supposed failure of Defendants to consider them for a [loan modification]. Moreover, since no foreclosure action is currently pending against their home, they have essentially been able to remain in their home without having to pay anything at all, though, to be sure, their mortgage principal, interest, and costs have been accruing.

*Mbongo v. JP Morgan Chase Bank, N.A.*, No. PJM-12-872, 2013 WL 4052823, at *4 (D. Md. Aug. 9, 2013). This Court also noted that any emotional distress suffered by the *Mbongo* plaintiffs "[could] not establish the 'detriment' element of promissory estoppel." *Id.* Similarly here, Orazi has not suffered economic damages by defendants' alleged failure to uphold the LMA because he has been able to remain in the Property without making any payments for six years, and emotional distress does not suffice to establish this element. Accordingly, summary judgment is granted in favor of defendants on the promissory estoppel claim.[5]

## CONCLUSION

For the aforementioned reasons, defendants' motion for summary judgment (ECF No. 101) is granted. A separate order follows.

September 6, 2018
Date

Richard D. Bennett
United States District Judge

---

[5] Because all claims have been resolved, this Court need not reach defendants' additional arguments in support of their motion for summary judgment.